COMMONWEALTH vs. RICHARD DeBROSKY    ·
(and nine companion cases [1]).

Franklin.    March 5, 1973. — June 8, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Place of trial. *Evidence,* Business record, Corroborative evidence, Witness' understanding, Immunized witness. *Identification.*

A judge who, in the exercise of discretion under G. L. c. 220, § 5, ordered the cross-examination of an elderly victim of robbery, unexpectedly hospitalized for nervous exhaustion, to continue in the air-conditioned auditorium of her hospital in the same county, and who publicized the transfer properly, did not impair the defendants' constitutional rights fully to cross-examine a witness against them. [720–722]

A motel registration by a defendant under a false name, being an admission, and a hotel registration by a witness subject to cross-examination were not "double hearsay" evidence, did not violate G. L. c. 233, § 78, and, in any event, were admissible in the judge's

---

[1] Four of the companion cases are against Richard DeBrosky and five are against Lawrence Coburn.

discretion to corroborate a witness's testimony that the defendants registered under certain names in those accommodations on those dates. [722–725]

An independent identification by a robbery victim of the defendant from nine fairly selected photographs, one of which showed the height of a man not the defendant, was not tainted by the victim's having read a statement by one of the robbers describing the defendant by height and weight. [725–726]

A question to a prosecution witness that "[y]ou understand that you have been granted immunity as to anything you say as to any participation of yours in the events of February 18, 1969?" was properly excluded as confusing. [726–727]

A defendant named Coburn was not convicted of robbery solely on the evidence of an immunized witness in violation of G. L. c. 233, § 20I, where there was testimony from a victim that one perpetrator of the robbery wore small sneakers and was called a name like "Collins" or "Colon," and further evidence that Coburn was with the immunized witness and his codefendant immediately after the robbery. [727–728]

History and analysis of G. L. c. 233, § 20I. [728–730]

TEN INDICTMENTS found and returned in the Superior Court on October 29, 1970.

The cases were tried before *Campbell, J.*

*Alexander Whiteside, II,* for the defendants.

*John M. Callahan,* District Attorney (*Stephen R. Kaplan,* Assistant District Attorney, with him) for the Commonwealth.

WILKINS, J. Shortly after 6 P.M. on the evening of February 18, 1969, three men entered the home of Mr. and Mrs. Clifford W. Mann in Greenfield and stole the major portion of Mann's valuable coin collection.

Each of the two defendants was found guilty of (1) putting Mann in fear for the purpose of stealing, (2) assault and battery on Mann by means of a dangerous weapon, (3) masked, armed robbery from Mann, (4) robbery from Mrs. Mann, and (5) unauthorized use of Mann's automobile, which it was claimed they used to leave the Mann home after loading the coin collection into Mann's car. The defendants appeal under the provisions of G. L. c. 278, §§ 33A–33G.

The first person to enter the Mann home grabbed Mrs. Mann, threatened her and tied her up. He was later identified by Mrs. Mann as the defendant DeBrosky.

This person undertook to blindfold Mrs. Mann, although in fact, as she testified, she was able to see a bit as she lay on the floor. The second person to enter the home wore a ski stocking mask. Mann saw him thus attired, but never saw his face. Mrs. Mann saw his feet. Subsequent testimony indicated that this second person was the defendant Coburn. During a brief scuffle, the second man struck Mann on the head with a shotgun, causing the gun to discharge but not injure anyone. The second man tied Mann up, blindfolded him and threatened him and kicked him in order to obtain the combinations to two safes where most of Mann's coins were stored. More than $800 was taken from Mann's wallet and about $34 was taken from Mrs. Mann's pocketbook. Mann testified that the market value of his coin collection was in excess of $13,000.

The third man who entered the Mann home was not seen by the Manns, although his voice was heard. One John S. Maglio, who testified for the Commonwealth after being granted immunity from prosecution pursuant to the provisions of G. L. c. 233, §§ 20C–20I, testified that he was that third man. He testified to events during the robbery which, in considerable degree, were confirmed by the testimony of the Manns. Maglio testified that DeBrosky and Coburn entered the house first and that he entered later. Testimony by Maglio describing events before and after the robbery was substantiated in certain respects by other evidence.

Facts relating to each issue will be set forth in the appropriate portion of this opinion. There was no error.

1. The judge neither exceeded his authority nor otherwise erred in permitting a portion of the trial to be conducted at the Franklin County Public Hospital (hospital).

On the second day of her testimony, during the course of her cross-examination, Mrs. Mann, who was sixty-five years old and had a heart condition, was hospitalized in a state of nervous exhaustion. On the following day, after consultation with her physician, the judge ordered that the cross-examination of Mrs. Mann continue in the air-

conditioned auditorium of the hospital. The judge made findings that "there would be a serious danger to her health and even to her life, were she to continue her testimony in this courtroom." The judge found that her physician had concluded that "she could testify with reasonable safety at the hospital . . . but not otherwise," and that the "interests of justice require that the testimony of this principal witness be obtained, if this is possible under circumstances which will not jeopardize her health." He ruled that "the defendants' rights of confrontation and cross examination can be preserved fully, if her testimony is taken in the auditorium of the . . . [hospital]." The judge relayed his intentions to the Chief Justice of the Superior Court who found the arrangements to be acceptable to him. The judge entered a written order with appropriate findings in support of his decision, including the finding that it would be "unsafe and inexpedient" to hold court in the court house during the balance of Mrs. Mann's testimony. The judge gave notice of his intention in open court, and a notice of the transfer of the trial to the auditorium of the hospital was published in a Greenfield newspaper on the day prior to her testimony at the hospital.

The court did convene at the hospital and Mrs. Mann testified there on cross-examination and on voir dire during the course of two days. The court denied the defendants' motions for a mistrial which were asserted in opposition to the transfer of the proceeding to the auditorium of the hospital.

The judge had the authority to transfer the trial to the auditorium of the hospital in the reasonable exercise of his discretion. Section 5 of G. L. c. 220, which is quoted in full in the margin,[2] authorized the holding of court at

---

[2] "If it is unsafe or inexpedient to hold a court at the time and place appointed, a justice of the court may appoint another time and place within the same county for holding the same. Such adjournment shall be made by an order in writing, signed by the justice or justices, and served by public proclamation by the person to whom it is directed in the shire town or as near thereto as is safe, and also by publication in such newspaper or in such other manner as is required in the order." G. L. (Ter. Ed.) c. 220, § 5.

another place in the same county. The judge fully complied with the requirements of the statute. In the discretion of the judge, any reason for a lack of "safety" or for a lack of expediency, if compelling in the circumstances, justifies action under G. L. c. 220, § 5.[3]

The defendants rely on *Commonwealth* v. *Handren*, 261 Mass. 294, where verdicts of guilty were set aside because a portion of a trial was held at the private homes of two ill witnesses, one of whom lived outside of the county where the court was sitting. The judge in the *Handren* case was not acting under G. L. c. 220, § 5; the trial proceeded in private homes, and not in an auditorium of a hospital (a place to which the public, including the press, had reason to believe it had a right of access). We agree with the *Handren* case (p. 298) that court sittings may be held only where authorized by law. The sitting held in the auditorium of the hospital was so authorized.

We reject the further contention that, even if there were an adequate jurisdictional basis for holding court at the hospital, the defendants' constitutional rights to cross-examine Mrs. Mann were impaired. There is no indication that Mrs. Mann was physically unable to testify under cross-examination. Nor is there any indication in our review of her cross-examination that Mrs. Mann's physical condition prejudiced the defendants in any way. No suggestion has been advanced to us that subjects of cross-examination were restricted or wholly foreclosed or that techniques of cross-examination which might have been employed were abandoned because of Mrs. Mann's condition. For all we know, because the trial continued at the hospital, Mrs. Mann may have been better able to tolerate, and the defendants better able to conduct, forceful cross-examination than would have been the case if she had returned to the court house.

2. There was no error in the admission of motel and hotel records showing the registration of persons at a

---

[3] In view of our holding, we need not consider whether there was any other ground to support the transfer of the trial.

motel in North Attleborough at 1 A.M. on February 19 (in the early morning following the robbery) and at a hotel in New York City on February 20. These records were admitted under the business records statute and, as is required in a criminal trial, "all questions of fact which must be determined by the court as the basis for the admissibility of the evidence involved" were submitted to the jury by the judge. G. L. c. 233, § 78, as appearing in St. 1954, c. 442, § 1.

The owner of the North Attleborough motel testified from registration records, which were introduced in evidence over objection, that one "Charles P. Reed" had taken two rooms for four people at 1 A.M. on February 19 and that he had a car with an Alabama registration. Maglio subsequently testified that, after transferring the coins in Greenfield from the Mann car to a car which Mrs. Maglio had driven to an agreed place, Coburn, DeBrosky, Maglio's wife and he drove to Haverhill. In Haverhill it was thought that a sale of the coins might be made in Providence and thus the group, augmented by two others who were assisting in the disposition of the coins, drove to North Attleborough. Maglio subsequently testified that when he arrived at the North Attleborough motel, Coburn was already there, that the coins were taken to a room in the motel at the direction of Coburn and another man and that Coburn had arrived in North Attleborough in a car with Alabama plates. A North Attleborough police officer testified that on March 26, 1969 (approximately five weeks after the robbery), he talked with Coburn at the same North Attleborough motel and Coburn gave his name as "Charles Reed" and "Charles P. Reed," the name used by the person registering the group at that motel shortly after midnight on the night of the robbery.

Records of the Hotel Taft in New York City were admitted in evidence, over objection. These records showed that on February 20, 1969, three persons purporting to be "John S. Maglio," "Lawrence Reed" and "Richard DeBroski" checked in. Maglio subsequently testified that

because the price offered for the coins in Providence was not satisfactory, the group had gone to Albany, New York, where the coins were sold, following which Coburn, DeBrosky and Maglio went to New York City where Maglio registered them at the Hotel Taft. He testified that he did so with the defendants at his side and that he registered the name "Lawrence Reed" at Coburn's direction.[4]

The defendants contend that hotel and motel registration records are not admissible to prove the presence of persons whose names are recorded on the business records of the motel or hotel. The argument advanced is that a statement made by a person to one who records it in circumstances which comply with G. L. c. 233, § 78, is not admissible to prove the truth of the facts recorded unless the statement itself is admissible, under some exception to the hearsay rule. The registration records, they claim, "were prepared on the bald, unverified representations of some unknown person or persons who registered for lodgings."

The evidence would have permitted the inference that Coburn himself registered at the North Attleborough. motel under the false name, "Charles P. Reed." [5] As a defendant, his representation on the motel registration record, as an admission, was within an exception to the hearsay rule. The author of the writing on the records of the Hotel Taft was Maglio, who testified under oath and subject to cross-examination concerning the origin of the writing and his personal knowledge of the information written by him on the registration form. There is, therefore, no issue of "double hearsay."

---

[4] As a convenience to the out-of-town witnesses, the testimony of the owner of the North Attleborough motel, the North Attleborough policeman and the manager of the Hotel Taft was admitted de bene before Maglio testified. The Commonwealth offered this evidence out of order, as the judge pointed out, at the peril of being unable to tie up any testimony admitted de bene which should later turn out to be prejudicial.

[5] The North Attleborough motel record does nothing to disclose the presence of DeBrosky, and its admission in evidence was not prejudicial to him.

The registration records were in any event admissible, in the judge's discretion, to corroborate the testimony of Maglio that the group was registered at the North Attleborough motel and at the Hotel Taft at particular times, on particular days, using certain names. See *Greene* v. *Cronin,* 314 Mass. 336, 339; *Sellew* v. *Tuttle's Millinery Inc.* 319 Mass. 368, 371; *Commonwealth* v. *Arsenault,* 361 Mass. 287, 299–300. Proof of the fact of registration was therefore proper without regard to the admissibility of the registration records as proof that particular persons were in fact present. See *Commonwealth* v. *Leonard,* 352 Mass. 636, 644 (fn. 6). The defendants did not move to strike the motel and hotel registration evidence, all of which was admitted de bene, nor did they at any time seek limiting instructions from the judge that the evidence was not admitted to prove the truth of those facts set forth in the registration records which were beyond the knowledge of the persons receiving and maintaining those records in the regular course of business.[6]

3. There is no merit to DeBrosky's claim that Mrs. Mann's pre-trial identification of him by photograph was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

---

[6] Because of the view we take of this issue we need not consider whether under G. L. c. 233, § 78, a business record is admissible "as evidence of the facts therein stated," even if there is no hearsay exception justifying the admission of the declarant's statement to the person or persons keeping the business records. Section 78 provides (in part) that "all other circumstances of the making thereof, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight. . . ."

The general view as to "business records" statutes is that a statement by some third party is not admissible merely because that statement is recorded in the regular course of business. See *Kelly* v. *O'Neil,* Mass. App. Ct. (296 N.E. 2d 223); *United States* v. *Burruss,* 418 F. 2d 677, 678–679 (4th Cir.); McCormick, Evidence (2d ed.) § 310. On the other hand, where there is a duty to report, such a recorded statement may be admissible. See *Fagan* v. *Newark,* 78 N. J. Super. 294, 317–320. Note that generally a person conducting a motel in this Commonwealth must maintain a record of the "true name or name in ordinary use" of each guest (G. L. c. 140, § 27) and that it is a crime for a guest to register other than under his true name or name in ordinary use (G. L. c. 140, § 29).

*Simmons* v. *United States,* 390 U.S. 377, 384. The judge conducted a voir dire hearing, made full findings concerning the circumstances under which Mrs. Mann was shown nine photographs and ruled that the constitutional standard was met. He allowed Mrs. Mann's testimony identifying DeBrosky to stand and denied DeBrosky's motion for a mistrial.

The defendant does not challenge the judge's findings but asserts that with the photographs before us we can determine that the identification procedure was impermissibly suggestive because immediately prior to the identification Mrs. Mann read a statement by Maglio which described DeBrosky by height and weight and because Mrs. Mann consequently had reason to believe that a picture of DeBrosky would be among those shown to her.

We have examined the nine photographs which were shown to Mrs. Mann and agree that the judge was correct in ruling that the assortment of pictures was fairly selected. See *Commonwealth* v. *Finn,* 362 Mass. 206, 209. No photograph showed the weight of any subject, and only one (not DeBrosky's) showed the height of the man portrayed. Moreover, our review of Mrs. Mann's testimony shows full support for the judge's finding that Mrs. Mann was "a person of strongly independent mind," whose pre-trial identification of the photograph was "the product of her independent choice and selection."

As we have emphatically reiterated recently (*Commonwealth* v. *Murphy,* 362 Mass. 542, 547–548), "careful findings supported by the evidence and upholding an in-court identification are not likely to be disturbed by us." *Commonwealth* v. *Frank,* 357 Mass. 250, 254. See *Commonwealth* v. *Roberts,* 362 Mass. 357, 363–365.

4. There was no error in excluding a question put to Maglio by Coburn's counsel that "[y]ou understand that you have been granted immunity as to anything you say as to any participation of yours in the events of February 18, 1969?" This question, calling for an affirmative or negative response as to his understanding on a mat-

ter of law, was properly excluded because it was at best confusing. Maglio was not immune from prosecution for perjury "as to anything . . . [he said] as to any participation of . . . [his] in the events of February 18, 1969." If defence counsel had wished to pursue the possibility that Maglio believed, or had been led to believe, that his immunity, or some governmental conduct in his favor, was contingent on the nature and quality of his testimony, such an inquiry could have been undertaken, within limits determined in the judge's discretion, to test the credibility of the witness. See *Miller* v. *Smith*, 112 Mass. 470, 476; *Commonwealth* v. *Heffernan*, 350 Mass. 48, 50. Defence counsel chose, however, not to pursue the point.

5. The final issue arises from Coburn's assertion that his motion for a directed verdict of not guilty should have been allowed because, under G. L. c. 233, § 20I, "[n]o defendant . . . shall be convicted solely on the testimony of, or the evidence produced by, a person granted immunity under . . . [G. L. c. 233, § 20E]."[7] We are presented for the first time with a question as to the meaning of the provision in § 20I that a defendant shall not be convicted "*solely* on the testimony" (emphasis supplied) of an immunized witness.[8]

Coburn does not seriously assert that there must be sufficient evidence to convict apart from the testimony of, or evidence produced by, an immunized witness. Indeed, it would be unlikely that immunity would be needed

---

[7] The motion was presented at the conclusion of the Commonwealth's evidence. In order to raise the propriety of the judge's action in these appeals, it was not necessary to renew that motion at the conclusion of the defendants' cases. See G. L. c. 278, § 11. Cf. *Commonwealth* v. *Cook*, 351 Mass. 231, 236.

[8] Section 20I was added to the General Laws as part of St. 1970, c. 408, an act "authorizing the granting of immunity to witnesses under certain conditions." Maglio testified before the grand jury after he was ordered to do so by a Justice of this court following a hearing. See G. L. c. 233, § 20E. Maglio declined to testify in the Superior Court until he was granted immunity, at the request of the district attorney, by the trial judge. G. L. c. 233, § 20F. If Maglio had not testified after receiving immunity, he would have been subject to contempt proceedings. G. L. c. 233, § 20H.

(or granted) if the prosecution had sufficient evidence to convict without the aid of a witness who would testify only if granted immunity. Coburn does assert, however, that there was no evidence apart from Maglio's testimony which establishes his participation in the crimes and that mere corroboration of Maglio's testimony as to the manner in which the crimes were committed does not constitute the kind of corroborating evidence which is required under G. L. c. 233, § 20I.[9]

In order to dispose of this case we need not decide whether corroboration of the testimony of an immunized witness is sufficient under § 20I where there is no corroboration of his testimony that a particular defendant was a participant in the crime. Here there was evidence tending to support Maglio's testimony that Coburn was the man who wore the ski stocking mask during the commission of the crimes. Mann testified concerning the relatively small size of the man, and Mrs. Mann testified concerning the small size sneakers she saw on one of the intruders. The jury, of course, saw Coburn's size in the court room. A written statement taken by a Greenfield police officer from Mrs. Mann, which was introduced without objection, and testimony from that police officer, disclosed that Mrs. Mann told him that one of the intruders called another by a name which sounded like "Collins" or "Colon." Additionally, there was evidence from other than Maglio which tended to show that Coburn, DeBrosky and Maglio were together immediately after the robbery.

Although what we have said is sufficient to dispose of this case, we think it appropriate to state our views on the nature of the corroborating evidence which is required under § 20I. In assessing the intention of the Legislature concerning corroboration of the testimony of an immunized witness, the previous treatment of the

---

[9] Mrs. Mann identified DeBrosky. DeBrosky does not assert that there was insufficient corroboration of Maglio's testimony as to his participation in the crimes, if (as we have held) Mrs. Mann's testimony in identifying DeBrosky was properly admitted.

testimony of accomplices is of some assistance.[10]   It has long been the general rule in this Commonwealth that a defendant may be convicted on the uncorroborated testimony of an accomplice. *Commonwealth* v. *Taber*, 350 Mass. 186, and cases cited. *Commonwealth* v. *Flynn*, 362 Mass. 455, 467.   As this court said in May, 1970, one month before the enactment of the witness immunity statute of which § 20I is a part, although "[a] trial judge may tell the jury to scrutinize the testimony of an accomplice with care, especially when the testimony is not corroborated . . . [citation omitted] [h]e is not required to do so." *Commonwealth* v. *French*, 357 Mass. 356, 396, judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts*, 408 U. S. 936.

Many States have adopted statutes requiring that there be some form of corroboration of the testimony of an accomplice.   Most such statutes have required that the corroboration tend to connect the defendant with the commission of the offence.   Wigmore, Evidence (3d ed.) § 2056, fn. 10, pp. 319–320.   Section 20I does not so provide in direct language.   Nor does it adopt the more explicit requirements of the only other "corroboration" statutes in effect in this Commonwealth.[11]   We think that some significance can be attributed to the fact that the Legislature adopted very general language concerning corroboration when specific language concerning the required form of corroboration was available to it.

The legislative history of § 20I does not suggest that

---

[10] It seems that most persons seeking immunity under § 20E would be persons who were, or might be claimed to be, accomplices.

[11] No person shall be convicted of treason "except by the testimony of two witnesses to the same overt act of treason." G. L. c. 264, § 4.

Under G. L. c. 272, § 11, a person shall not be convicted of certain crimes concerning the abduction, and so forth, of women "upon the evidence of one witness only, unless his testimony is corroborated *in a material particular*" (emphasis supplied).   In *Commonwealth* v. *Taschetta*, 252 Mass. 158, 160, corroborating evidence that the woman accompanied the defendant to a particular house and left it with him was held to be sufficient under G. L. c. 272, § 11, to sustain a conviction, even in the absence of corroborating evidence, that the defendant fraudulently and deceitfully enticed the woman away from her father's home for the purpose of unlawful sexual intercourse with her.

§ 20I must be read to require corroborating testimony identifying the defendant as a participant in the crime. The bills from which St. 1970, c. 408, was derived contained no provision requiring corroboration of an immunized witness in any respect.[12] By amendment, language was added requiring that the testimony of an immunized witness be "corroborated by the testimony of at least one other witness or by some other evidence."[13] Subsequently that added language was deleted in favor of the language which now appears in § 20I.

Considering the long-standing absence in this Commonwealth of any requirement that a conviction based on the testimony of an accomplice be supported by some other evidence, we believe that § 20I simply changed the law to require that there be some evidence in support of the testimony of an immunized witness on at least one element of proof essential to convict the defendant. Thus evidence corroborating an accomplice's testimony concerning the commission of the crime would be sufficient under the statute, even if there were no other evidence connecting a defendant to the crime.

The purpose of the statute is to require support for the credibility of the immunized witness. That support may come as much in the form of corroboration of evidence of the commission of the crime as it does from proof that the defendant was a participant. Wigmore, Evidence (3d ed.) § 2059, p. 327.

*Judgments affirmed.*

---

[12] Various bills on the subject of witness immunity were filed for consideration by the Legislature during 1970. See 1970 Senate Bill No. 84; 1970 House Bills Nos. 305, 2891 and 5043.

[13] On May 6, 1970, 1970 House Bill No. 2891 was amended by the addition of the following language as a new section (1970 Senate Journal, pp. 1212–1214) : "No defendant in any criminal proceeding shall be convicted on the testimony of or evidence produced by a person granted immunity under the provisions of § 20B with reference to such testimony or evidence before the grand jury or in any subsequent criminal proceeding, unless such testimony or evidence is corroborated by the testimony of at least one other witness or by some other evidence."