COMMONWEALTH *vs.* JAMES A. DOYLE.

Middlesex.     April 19, 1977. — July 25, 1977.

Present: KEVILLE, ARMSTRONG, & BROWN, JJ.

*Practice, Criminal,* Trial of indictments together. *Evidence,* Other offense, Immunized witness, Corroborative evidence, Collateral matter. *Witness,* Immunity.

At the trial of eleven indictments each charging the defendant with procuring the burning of a building, the judge did not abuse his discretion in refusing to sever trial on one of the indictments where the crimes alleged differed only in the date, buildings, and identities of accomplices. [546-547]

At the trial of eleven indictments each charging the defendant with procuring the burning of a building, in which a teenage neighbor of the defendant testified that he had started ten of the fires at the defendant's instigation, there was no error in the admission of certain testimony by three other teenagers that the defendant had solicited them to start fires. [547-548]

Where an unindicted accomplice voluntarily waived his Fifth Amendment privilege *without a grant of immunity* under G. L. c. 233, § 20E, no corroboration of his testimony was required under § 20I, even though the witness had been given nonbinding representations by the assistant district attorney that he would not be prosecuted if he chose to testify. [548-550]

After a witness for the Commonwealth had given testimony bearing upon a collateral issue, the judge did not abuse his discretion in excluding evidence seeking to disprove the testimony. [550]

INDICTMENTS found and returned in the Superior Court on December 13, 1974.

The cases were tried before *Prince,* J.

Commonwealth *v.* Doyle.

*John P. Connor, Jr.,* for the defendant.
*Roberta Thomas Brown,* Legal Assistant to the District Attorney, for the Commonwealth.

KEVILLE, J.   The defendant Doyle was tried on eleven indictments charging him with "procuring the burning of a building in the town of Holliston." A jury found him guilty on eight of the eleven indictments and he was sentenced. He brings this appeal pursuant to G. L. c. 278, §§ 33A-33G. The Commonwealth's chief witness on ten of the eleven indictments was William Canavan, a teenage neighbor of the defendant. Canavan had been acquainted with Doyle for approximately a year before the first of the fires involved here. During that time they went bowling together regularly and participated together in other activities. Canavan frequently accompanied Doyle in chasing fires locally and in Boston and went with him to the SPARKS Club[1] headquarters. Doyle drove a red car with five radio scanners in it for monitoring fire and police calls and had additional scanners in his home. He also had a part-time job as a fire insurance adjuster.

Most of Canavan's testimony involved the circumstances of eleven fires in the Holliston area which occurred at various intervals between April, 1973, and September, 1974. Canavan testified that the first fire took place after he and three of his friends, Mark Bomchak, Billy Boston and Michael Potter had been at James Doyle's house on April 17, 1973. Doyle remarked to them: "It's a little dull around here, why doesn't somebody go out and do something exciting like light a fire." Potter and Boston agreed to start one and Doyle showed them how to light it. After the fire had been started, they all drove around for a while in Doyle's car to avoid suspicion and returned to the scene of the fire to watch it after it had been reported over the

---

[1] The SPARKS Club, as described by its president at trial, is an organization of firemen and civilians whose purpose is to aid metropolitan fire departments in emergencies and to promote friendly relations and better understanding between civilians and professional firefighters.

radio. Later testimony of Boston and Bomchak substantiated the details of this incident.

Canavan testified that the other ten fires were lighted by him after conversations with Doyle in which the defendant suggested that Canavan should light a fire to alleviate the lack of excitement. Doyle either proposed a site or asked Canavan to do so. He would then discuss with the teenager how the fire was to be lighted. Sometime after January, 1974, Canavan started lighting the fires with Dura Flame logs which Doyle provided. When the alarms for the fires came over the scanner radios, Doyle and Canavan watched the buildings burn.

Gregg Spiller, another teenage neighbor of Doyle, who was sixteen at the time of trial, told the jury of a conversation he had had with Doyle in approximately April, 1973, in which Doyle asked Spiller if he would light a fire in a tree house for which action Spiller would be paid ten dollars. Spiller declined.

The fire chief of Holliston testified for the Commonwealth concerning the details of the fires alleged in the indictments. He had investigated all of them and had confirmed the locations and dates specified by Canavan. He found traces of Dura Flame type logs at three of the fires. However, a number of the buildings had burned completely. In these instances there remained no evidence of the cause of the fires which were then reported as of "undetermined" origin.

The defendant presented several witnesses to impeach the testimony of Canavan; but they furnished no substantial contradiction of his testimony. Two of the defendant's witnesses testified that Canavan did not have a good reputation for truth and veracity in the community. The defendant's appeal raises four issues.

1. The defendant claims that his motion to sever trial on one of the eleven indictments from the remaining ten was erroneously denied. This indictment, No. 114,197, charged the defendant with procuring Boston to set a fire on April 17, 1973. The other ten indictments dealt with fires set by Canavan beginning in August, 1973, and extending for a

period of about a year. The defendant contends that the April 17 fire was distinct from the others "in principals, victims, time, and proof" and that severance was required.

Whether or not indictments joined for trial should be severed is a matter within the sound discretion of the judge. *Commonwealth* v. *Iannello,* 344 Mass. 723, 727 (1962). *Commonwealth* v. *Jervis,* 368 Mass. 638, 645-646 (1975). The test used to determine whether there has been an abuse of discretion by a trial judge in refusing to grant a severance is whether the record demonstrates that joinder has resulted in prejudice to the defendant or that "substantive rights of the defendant [have been] adversely affected." *Commonwealth* v. *Slavski,* 245 Mass. 405, 412 (1923). Ordinarily where the offenses joined are "kindred and liable to punishment of the same general character," there is no abuse of discretion in denying severance. *Commonwealth* v. *Veal,* 362 Mass. 877 (1972). *Commonwealth* v. *Drew,* 4 Mass. App. Ct. 30, 33 (1976). Here all eleven indictments alleged the same type of crime. They differed only in the dates, buildings, and the identities of the accomplices. Severance is not required merely because the offenses charged occurred on different dates (*Commonwealth* v. *Benjamin,* 3 Mass. App. Ct. 604, 626-627 [1975]) or involved different victims (*Commonwealth* v. *Drew,* 4 Mass. App. Ct. at 33). Although the April 17, 1973, fire occurred four months before the next fire, it occurred within the same relative time span as the other fires. The testimony tending to prove this indictment was substantially the same as that concerning the other ten. Thus, there is no persuasive reason why they should not have been joined for trial. *Commonwealth* v. *Drew, supra.* Finally, the defendant has not shown that the joinder here resulted in his case being prejudiced in any way, particularly in view of the fact that the jury returned a verdict of not guilty on this indictment.

2. As already related, Boston and Bomchak testified to the details of the fire which occurred on April 17, 1973, and Spiller testified to an occasion on which the defendant solicited him to set fire to a tree house. The defendant con-

tends that the admission of the testimony of these three witnesses was error because it was evidence of other crimes introduced to prove the crime charged and was insufficiently related in time, plot and design to the acts for which the defendant was on trial.

This argument is based in some measure on the defendant's assumption that indictment No. 114,197 should have been severed from the others, and that therefore there was no justification for the admission of testimony in support of that indictment. Since we have decided that the indictment was properly joined with the others, the testimony was admissible to prove the offense charged in that indictment. Even if it were not the subject of a properly tried indictment, the challenged testimony of Boston and Bomchak as well as that of Spiller was admissible.

The general rule governing the admissibility of evidence of similar criminal acts was stated by this court in *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. 1, 3 (1972), quoting from *Harper* v. *United States*, 239 F. 2d 945, 946 (D.C. Cir. 1956), "Evidence of other offenses is admissible when substantially relevant to the offense charged; inadmissible when its relevance is insignificant; and, in borderline cases, admissible when its relevance outweighs the undue prejudice that may flow from it, but otherwise inadmissible." The testimony that the defendant had solicited others to start fires was relevant to prove his motive and intent. Evidence of the solicitation of other teenagers to start fires was also admissible to demonstrate a pattern of conduct. See *Commonwealth* v. *Campbell*, 371 Mass. 40, 42 (1976). The testimony was also admissible to buttress the credibility of Canavan. Since it was substantially relevant, its exclusion can be justified only if its admission would be unduly prejudicial to the defendant. *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. at 3. We conclude that no undue prejudice resulted from its admission. *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973).

3. Prior to Canavan's testifying before the grand jury, an assistant district attorney gave him a paper purporting to be a grant of immunity from prosecution in exchange

Commonwealth *v.* Doyle.

for his testimony. Before trial, the judge determined that the decision in the recent case of *Grand Jurors for Middlesex County for the Year 1974* v. *Wallace,* 369 Mass. 876 (1976), established that a district attorney alone does not have the authority to grant immunity and thus the witness Canavan was not protected from prosecution. Canavan was informed by the judge that the signed document was invalid as a grant of immunity and that Canavan could, if he chose, invoke the Fifth Amendment privilege and refuse to testify. Canavan acknowledged his understanding that the grant of immunity was invalid; but he nevertheless agreed to testify after his attorney had conferred with the prosecutor who stated that the Commonwealth's intention was not to prosecute Canavan if he testified. The defendant claims that Canavan, although no longer protected by the invalid grant of immunity, was nevertheless testifying only as a result of, and in reliance upon, the assistant district attorney's promise that he would not prosecute. Because of this, the defendant argues that Canavan's testimony should be considered that of an immunized witness and subject to the statutory rule requiring the Commonwealth to produce additional supporting evidence of the crime since the uncorroborated testimony of such a witness is insufficient to convict.[2]

The record makes clear that the judge carefully and precisely informed Canavan that the purported grant of immunity was invalid, that the representations made by the assistant district attorney were not binding on the Commonwealth, and that Canavan could be prosecuted if he chose to testify. Where an unindicted accomplice voluntarily waives the Fifth Amendment privilege without a grant of immunity, no corroboration of his testimony is required under Massachusetts law. *Commonwealth* v. *Taber,*

---

[2] The applicable statute is G. L. c. 233, § 20I, inserted by St. 1970, c. 408, which provides: "No defendant in any criminal proceedings shall be convicted solely on the testimony of, or the evidence produced by, a person granted immunity under the provisions of section twenty E."

350 Mass. 186 (1966). *Commonwealth* v. *DeBrosky*, 363 Mass. 718, 729 (1973).

Even if it were assumed that Canavan could properly be regarded as an immunized witness, G. L. c. 233, § 20I, requires only that there be "some evidence in support of the testimony of an immunized witness on at least one element of proof essential to convict the defendant." *Commonwealth* v. *DeBrosky, supra,* at 730. *Commonwealth* v. *Turner,* 371 Mass. 803, 811-812 (1977). The testimony of the fire chief concerning the dates, locations, times and, in some instances, the cause of the fires, was sufficient corroborative testimony to meet the statutory requirement.

4. The defendant's final claim of error concerns testimony sought to be introduced through his wife to impeach the credibility of Canavan. In the course of his direct testimony Canavan stated without objection that during a conversation he had with the defendant, the latter said that he might divorce his wife. The evidence which the defendant later sought to introduce through Mrs. Doyle was that she and the defendant had recently renewed their marriage vows on two separate occasions. Whether the defendant was planning to obtain a divorce was clearly collateral to the issue which was the subject matter of the trial. While testimony bearing upon collateral issues may be introduced in the discretion of the judge (see *Commonwealth* v. *Hersey,* 324 Mass. 196, 202, 203 [1949]), a party is not permitted to prove, or disprove, a collateral issue as of right (*Commonwealth* v. *Connolly,* 308 Mass. 481, 495 [1941]). We perceive no abuse of discretion in the judge's ruling excluding the testimony of Mrs. Doyle.

*Judgments affirmed.*