COMMONWEALTH *vs.* SAMUEL JACOBS.

Suffolk.     September 18, 1978. — October 13, 1978.

Present: KEVILLE, GOODMAN, & GRANT, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Evidence,* Corroborative evidence, Immunized witness. *Witness,* Immunity, Corroboration.

General Laws c. 233, § 20I, requires only that there be some evidence in support of the testimony of an immunized witness on at least one element of proof essential to convict a defendant and does not require corroborating testimony identifying the defendant as a participant in the crime. [621–622]

At the trial of a defendant charged with assault and battery by means of a dangerous weapon and the unlawful carrying of a firearm on his person, there was sufficient evidence corroborative of the testimony of immunized witnesses on at least one element of each indictment to warrant the denial of the defendant's motion for a directed verdict. [622–623]

INDICTMENTS found and returned in the Superior Court on January 7, 1977.

The cases were heard by *Roy*, J.

*Peter M. Dowd* for the defendant.

*Margaret A. Corrigan*, Special Assistant District Attorney, for the Commonwealth.

KEVILLE, J. The defendant was found guilty after a jury-waived trial in the Superior Court of assault and battery by means of a dangerous weapon and of the unlawful carrying of a firearm on his person. His appeal is here pursuant to the provisions of G. L .c. 278, §§ 33A–33G.

The principal witnesses for the Commonwealth at trial were the victim of the assault and battery, Eugene Trioli, and his companion Christopher Johnson. They testified as immunized witnesses following grants of immunity pursuant to the provisions of G. L. c. 233, §§ 20E and 20F.

Before addressing the only assignment of error argued, viz., the denial of the defendant's motion for a finding of not guilty, we summarize the evidence.

From the testimony of Trioli and Johnson there was evidence that on April 5, 1976, at about 11:30 P.M., they entered the Normandy Lounge on Essex Street in the section of Boston known as the "combat zone." Johnson ordered a beer but Trioli refused to order. Following her conversation with two men at the end of the bar, the barmaid informed Trioli that he must order a drink. He again refused. Almost immediately thereafter the defendant, after conversing with the two men at the end of the bar, approached Trioli and struck him on the head with a club which resembled a police nightstick. A scuffle ensued. Johnson took the club from the defendant and hit him on the head, a blow which felled him. Then Trioli and Johnson, observing the approach of the two men with whom the barmaid had talked, made their exit by a fire door entering upon an alley and thence on to Essex Street where they saw the defendant and the two men standing in the door of the lounge.

At that juncture the defendant opened fire on them
with what appeared to be a small caliber weapon. In
response, Trioli drew a revolver and aimed it at the de-
fendant. One of the men jumped Trioli who threw him
over his shoulder. In the meanwhile Johnson had rushed
in and subdued the defendant. As Johnson and Trioli
walked away from the defendant in the direction of Har-
rison Avenue, leaving him in possession of his firearm,
the defendant fired several shots wounding Trioli in both
legs. The hospital record introduced in evidence by the
Commonwealth at trial indicated that Trioli had been
shot from behind in the right thigh and left calf.

Johnson and Trioli continued along Essex Street where
they were met by police in a cruiser. Trioli surrendered
his revolver, for which he had a license, to the police who
testified at trial that the weapon was fully loaded with
five or six rounds and no expended shells. Police officers
related that Trioli and Johnson and the defendant were
all taken to the Massachusetts General Hospital by the
police and that shortly thereafter the police found a load-
ed .25 caliber semi-automatic under a car in the parking
lot adjacent to the lounge. At trial this weapon was identi-
fied by Trioli as being similar in appearance to the small
caliber weapon held by the defendant during the shoot-
ing.

A police ballistician testified that the weapon was a .25
caliber automatic with an obliterated serial number and
a single live round, that the weapon was capable of being
fired, that its magazine had a capacity of eight bullets
when fully loaded and that prior to a firing test made by
him there was evidence in the firing chamber which indi-
cated that the weapon had been fired.[1]

---

[1] The version of the incident given by the defendant and his wit-
nesses was decidedly different from that related above and introduced
by the Commonwealth. The import of his testimony was that Trioli
and Johnson were the aggressors, that when he ordered them to buy
a drink or get out that both produced weapons, that he was hit on the
head and kicked, that the barmaid reported to him that while he was

The defendant contends that the evidence introduced by the Commonwealth was insufficient measured by the requirements of G. L. c. 233, § 20I, inserted by St. 1970, c. 408, which provides that "[n]o defendant in any criminal proceeding shall be convicted solely on the testimony of, or the evidence produced by, a person granted immunity under the provisions of section twenty E." Specifically, the defendant argues that the Commonwealth's evidence, other than the testimony of the immunized witnesses, was insufficiently corroborative of the testimony of those witnesses. In addition he contends that such other evidence could not properly be considered for the purpose of corroborating the testimony of the immunized witnesses because its foundation was laid by their testimony.

The corroborative evidence offered against the defendant in this case consisted of the following: (1) The discovery near the Normandy Lounge by the police of the .25 caliber gun resembling that allegedly used by the defendant; (2) police testimony which tended to prove that this gun had been fired while Trioli's gun, containing five or six rounds, had not; and (3) the hospital record, which not only confirmed the fact of Trioli's wounds, but corroborated testimony of Trioli and Johnson indicating that Trioli had been shot from behind.

No testimony, other than that of the immunized witnesses, confirmed that it was the defendant who stood at the doorway of the Normandy Lounge firing a gun at Johnson and Trioli. However, § 20I does not "require corroborating testimony identifying the defendant as a par-

"down" she had heard shots outside, that he had staggered to the door of the lounge and seen the police car approaching and that the police had taken him to the hospital. He denied a confrontation with Johnson at the front door of the lounge and he testified that he kept no club, bat, or gun at the establishment. Whether this version or that of the Commonwealth was credible was a question of fact to be determined by the judge. See *Commonwealth* v. *Holiday,* 349 Mass. 126, 129 (1965); *Commonwealth* v. *Scanlon,* 373 Mass. 11, 20 (1977).

ticipant in the crime." *Commonwealth* v. *DeBrosky,* 363 Mass. 718, 730 (1973). In *DeBrosky* the court noted that other "corroboration" statutes in Massachusetts and elsewhere specifically require corroborative evidence tending to connect the defendant to the crime. In contrast, the language of § 20I is less explicit. Its purpose of ensuring the credibility of testimony given by immunized witnesses may be fulfilled by requiring only "that there be some evidence in support of the testimony of an immunized witness on at least one element of proof essential to convict the defendant."[2] *Ibid.*

In *Commonwealth* v. *Scanlon,* 373 Mass. 11, 20 (1977), in which the defendant and his immunized accomplice had forced the victim into a car and taken him for a ride which ended in the victim's being shot to death, the defendant admitted to most details of the incident except the shooting itself which he attributed to the immunized accomplice. There the court noted that "the testimony of the immunized witness was corroborated under . . . [the *DeBrosky*] standard as to one element of proof essential to convict the defendant — that . . . [the victim] died as the result of gunshot wounds to the head." *Ibid.* Thus, there was adequate corroboration "despite the fact that only . . . [the immunized witness] and . . . [the defendant] could say how the killing actually occurred." *Ibid.* Similarly, in the instant case, independent evidence establishing that the defendant did the shooting is not required under § 20I. See *Commonwealth* v. *Doyle,* 5 Mass. App. Ct. 544, 550 (1977).

The requisite proof for conviction on a charge of assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A) consists of a "showing that . . . intentional force was applied against the victim, and that it was applied by

---

[2] While the immunized witness in *DeBrosky* was, unlike Trioli and Johnson in the instant case, an accomplice, it is clear that § 20I applies also to the testimony of an immunized witness other than an accomplice.

means of the dangerous weapon." *Salemme* v. *Commonwealth*, 370 Mass. 421, 424 (1976). Although there was no direct evidence apart from that of the immunized witnesses which tended to prove that the defendant did the shooting, the combination of (1) the hospital record, indicating that Trioli had been shot from the rear, and (2) the police testimony, that the weapon found near the scene had been fired and that Trioli's gun had not, tended to corroborate the testimony of the immunized witnesses that intentional force by means of a dangerous weapon had been exerted against Trioli. With respect to the second indictment, unlawful possession of a firearm (G. L. c. 269, § 10[a]), the evidence that Trioli had been shot established knowing possession of a firearm although it did not point specifically to the defendant. See *Commonwealth* v. *Bacon*, 374 Mass. 358, 359 (1978). There was, therefore, some corroborative evidence on at least one element of each indictment to warrant the denial of the defendant's motion for a finding of not guilty. See *Commonwealth* v. *Doyle*, 5 Mass. App. Ct. at 550; *Commonwealth* v. *Stewart*, 375 Mass. 380, 386 (1978).

Finally, the defendant asserts[3] that the corroborative evidence (specifically, the gun found in the parking lot and the hospital record) offered by the Commonwealth was not valid corroborative evidence under § 20I because it was "evidence produced by immunized witnesses" or depended on the testimony of those witnesses for its "foundation." The defendant's reliance upon *People* v.

---

[3] There is no substance to the defendant's contention that the Commonwealth's failure to introduce evidence, apart from the testimony of the immunized witnesses, to establish a prima facie case entitled him to a finding of not guilty. In disposing of a similar argument in *DeBrosky*, the court said that the defendant "does not seriously assert that there must be sufficient evidence to convict apart from the testimony of, or evidence produced by, an immunized witness. Indeed, it would be unlikely that immunity would be needed (or granted) if the prosecution had sufficient evidence to convict without the aid of a witness who would testify only if granted immunity." *DeBrosky*, 363 Mass. at 727–728.

*Bowley,* 59 Cal.2d 855 (1963), for this assertion is misplaced. The basis for the judgment in that case is a statutory requirement which differs from § 20I (see our earlier discussion of *DeBrosky, supra* at 621-622) and affords no support for the defendant's contentions.

*Judgments affirmed.*