## Commonwealth *vs.* Thomas Doherty
## (and a companion case[1]).

Middlesex. October 14, 1986. — March 13, 1987.

Present: Armstrong, Quirico, & Dreben, JJ.

*Evidence,* Corroborative evidence, Immunized witness, Spontaneous exclamation, Impeachment of credibility. *Witness,* Immunity, Corroboration, Impeachment, Credibility. *Practice, Criminal,* Opening statement, Witness.

At the trial of defendants charged with assault by means of a dangerous weapon, there was sufficient evidence corroborative of the testimony of an immunized witness on at least one element of proof essential for conviction on the charge, as required by G. L. c. 233, § 20I, to warrant the denial of the defendants' motions for required findings of not guilty. [634-635]

At the trial of defendants charged with armed assault with intent to murder and assault by means of a dangerous weapon, the judge did not err in permitting the prosecutor to state, in opening argument, that the Commonwealth would prove that one of the defendants fired two shots at the victim from a handgun where, although the victim did not hear the shots, such a proposition was fairly inferable from other evidence the prosecution expected to introduce. [635-636]

At a criminal trial, the judge was not required to declare a mistrial in circumstances in which a prosecution witness's answer to a question from defense counsel on cross-examination had implicated the defendant in another crime, and it was sufficient that the judge struck the answer and told the jury to disregard it. [636]

At the trial of defendants charged with armed assault with intent to murder and assault by means of a dangerous weapon, the judge, during cross-examination of the victim's girlfriend, did not abuse his discretion in precluding defense counsel from eliciting testimony with regard to the victim's specific acts of violence towards men he suspected of familiarity with her, as tending to support the defendants' assertion that the victim had been the aggressor in the particular incident which gave rise to the charges being tried. [636-637]

---

[1] Commonwealth *vs.* John Gillen, Jr.

INDICTMENTS found and returned in the Superior Court Department on November 7, 1984.

The cases were tried before *Hiller B. Zobel, J.*

*Isaac H. Peres* for Thomas Doherty.

*Joseph Flak* for John Gillen, Jr.

*Karen J. Kepler,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendants appeal from convictions of armed assault with intent to murder (with a shotgun) and assault by means of dangerous weapon (with a handgun). The principal witness was the victim, Joseph P. Bangs, a retired Metropolitan District Commission police officer, who testified under a grant of immunity (G. L. c. 233, §§ 20E and 20F). The gist of his testimony was that he received a telephone call from the defendant Doherty, a Medford police officer, who was his neighbor and business associate, in response to which he crossed the street with a package of "something" (against Doherty but not against the defendant Gillen, the "something" was identified as cocaine), entered Doherty's barn, mounted a spiral staircase, and opened the door to Doherty's office. Gillen, Doherty's brother-in-law, was crouched aiming a shotgun at the doorway. He fired, wounding Bangs in the right shoulder and chest. Bangs wheeled around, ran down the staircase (receiving a second shotgun blast to the back), turned around briefly at the outer door, saw Doherty aiming a long-barrelled handgun at him, and ran across the street to his own home, where his girlfriend, Deborah O'Malley, telephoned for an ambulance.

The judge correctly denied the defendants' motions for required findings of not guilty on the handgun charge. The evidence on this charge, the defendants argued, stood on the uncorroborated testimony of an immunized witness, in violation of G. L. c. 233, § 20I, because Bangs was the sole witness to Doherty's alleged aiming of the handgun. The statute requires corroboration only as to one element of the crime charged. *Commonwealth* v. *DeBrosky,* 363 Mass. 718, 730 (1973). *Commonwealth* v. *Jacobs,* 6 Mass. App. Ct. 618, 621-623 (1978). Here there was evidence that two bullets were found in the jamb of the door through which Bangs had escaped.

There was also O'Malley's testimony that Bangs, on reentering his own home (at the time in great pain and bleeding profusely), had told her that "Doherty and Gillen had shot him and Al Roberts was there."[2] This testimony was properly admitted as a spontaneous declaration or excited utterance (Bangs was ordering her to get him his handgun, inferentially to guard against pursuit into his house, and to call the police and the fire department). See *Commonwealth* v. *Hampton,* 351 Mass. 447, 449-450 (1966); *Commonwealth* v. *Sellon,* 380 Mass. 220, 229-230 (1980); *Commonwealth* v. *Clary,* 388 Mass. 583, 589 (1983); Liacos, Massachusetts Evidence 350-351 (5th ed. 1981). The utterance, although that of the immunized witness, was made prior to any grant of immunity. As it stands on a different footing from his trial testimony, it may be treated as corroboration without violating the policy of the statute. O'Malley's testimony tended to corroborate Bangs's in another respect: she verified that he had received the phone call from Doherty, a point Doherty denied, and one which tended to support an inference that the defendants had been the aggressors.[3]

The prosecutor's statement, in opening, that the Commonwealth would prove that Doherty fired two shots from the handgun, although Bangs didn't hear them, was a proposition fairly inferable from the bullets found in the door jamb. These entered from the direction of the staircase where Doherty (according to Bangs) stood while aiming. Bangs's inability to recall hearing those shots would go to the weight to be given his testimony in this regard[4] but would not vitiate the inference

---

[2] Roberts was a codefendant whose motion for a required finding of not guilty was allowed. The evidence indicated that he had been on the ground floor of Doherty's barn and had admitted Bangs. He had not been in Doherty's office, where Bangs was ambushed, and was not otherwise connected to the shooting.

[3] The defendants claimed self-defense, testifying to a scenario in which Bangs broke into the barn with a shotgun to punish Doherty for not keeping away from O'Malley.

[4] Bangs apparently did not hear the second shotgun blast either; he testified only to feeling a pain in his back as he ran down the stairs. The auditory effect of the first blast or the general turmoil inherent in the situation might account for this.

arising from the bullets, the aiming, and a setting consistent with ambush. We know of no rule that precludes a prosecutor from asserting in his opening a proposition fairly to be inferred from evidence he anticipates introducing. See *Commonwealth v. Fazio,* 375 Mass. 451, 454 (1978) ("The prosecutor in a criminal action in general may state in his opening anything that he expects to be able to prove by evidence").

Bangs's testimony that certain jewelry in the trunk of his car "was taken from a robbery . . . Memorial Day weekend of Depositors Trust in Medford" did not require a mistrial. It was a direct answer to a question put to Bangs on cross-examination by Doherty's counsel ("Where did you get that jewelry?"). It is argued that the answer unfairly tainted Doherty because he and Bangs were "business associates" and because Doherty was known to be a prime suspect in the Depositors Trust robbery. Assuming that to be so, counsel should not have invited the answer. The judge was not required to declare a mistrial. He struck the answer and told the jury to disregard it. This sufficed in the circumstances.

Defense counsel, in support of their self-defense theory (see note 3, *supra*), attempted to elicit from O'Malley in cross-examination specific instances of aggressive behavior by Bangs towards men he suspected of familiarity with O'Malley. The defendants were permitted to inquire concerning Bangs's reputation of violence and concerning any instances of violent behavior in O'Malley's presence directed toward Doherty, or towards other men in the presence of Doherty or Gillen. The defendants do not dispute the general rule that a witness may not be impeached by a showing of prior bad acts other than criminal convictions. See *Commonwealth v. Cheek,* 374 Mass. 613, 615 (1978); Liacos, *supra* at 149-150. Here the defendants sought to go further: that is, their goal was only incidentally to impeach Bangs's credibility; their purpose was to show that Bangs was the aggressor in the incident being tried by showing that he had behaved similarly towards others in the past.

In general the law has been hesitant to permit such evidence to be offered. See McCormick, Evidence § 188 (3d ed. 1984), stating "that evidence of character in any form, whether reputa-

tion, opinion from observation, or specific acts will not generally be received to prove that the person whose character is sought to be shown, engaged in certain conduct, or did so with a given intent, on a particular occasion." In *Commonwealth* v. *Nagle,* 157 Mass. 554, 555 (1893), the court stated, broadly: "For the purpose of proving that one has or has not done a particular act, it is not competent to show that he has or has not been in the habit of doing other similar acts." See *Commonwealth* v. *Roberts,* 378 Mass. 116, 129 (1979). See also *Brownhill* v. *Kivlin,* 317 Mass. 168, 171 (1944), where the plaintiff, trying to prove that the deceased started a fire by falling asleep while smoking, was not permitted to show through a captain of the fire department that the deceased had caused three similar fires in the year preceding the fatal fire. Many other authorities are collected there. The trend of the cases in recent years has been to liberalize the reception of evidence of this type. See, e.g., *Commonwealth* v. *Bohannon,* 376 Mass. 90, 92-94 (1978); *Commonwealth* v. *Imbruglia,* 377 Mass. 682, 693-696 (1979); *Commonwealth* v. *Fontes,* 396 Mass. 733, 735-737 (1986).[5] Necessarily, however, the trial judge must be invested with a measure of discretion requiring a weighing in the balance of the probative force of the proffered evidence; its remoteness in time, place, or character; the danger that the trial will be sidetracked into a disproportionate examination of collateral issues; and fairness to the parties. See McCormick, Evidence § 190, at 452-454 (2d ed. 1972). Here, there was much evidence that Bangs had a violent character and that Doherty and Gillen knew his propensity for violent action. The judge did not abuse his discretion in precluding O'Malley's testimony concerning Bangs's acts of violence not directed at Doherty or committed in his presence.

---

[5] The *Fontes* decision, issued after the trial in this case, held that, in a homicide case where self-defense is claimed, the defendant should be allowed to prove that at the time of the killing he knew of specific violent acts recently committed by the victim. 396 Mass. at 735. The trial judge here gave the defendant comparable latitude (although this was not a homicide case) by allowing O'Malley to be cross-examined concerning instances of violence by Bangs committed in her presence and that of Doherty, whether directed against Doherty or against others.

The defendants' other contentions have no merit. The judge did not definitively exclude the portion of the photograph showing the firearms found in the trunk of Bangs's car; he indicated that he would reconsider if some evidence should come in showing relevance. When such evidence did come in, the defendants did not seek reconsideration. The evidence was cumulative in any event, as an investigating police officer testified to the contents of the trunk, including guns and ammunition. The prosecutor's action in removing the bag of cocaine from the exhibit envelope so that the jury were able to see it, was apparently inadvertent and the subject of a rebuke by the judge. The defendants sought neither curative instructions nor a mistrial, and they may not now raise the issue for the first time on appeal. No rule of evidence barred admission of the fact that the packet contained cocaine; how to deal with the situation lay in the judge's sound discretion. The jury had already heard testimony that Bangs and Doherty were in the drug-dealing business together, including dealing in cocaine. Against Doherty, as mentioned above, testimony had already been received that the packet contained cocaine. In the circumstances, prejudice to the defendants was minimal.

*Judgments affirmed.*