COMMONWEALTH *vs.* STEPHEN FERNANDES.

Plymouth. April 7, 1997. - July 2, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Evidence,* Corroborative evidence, Immunized witness. *Practice, Criminal,* Capital case.

This court declined to modify its holding in *Commonwealth* v. *DeBrosky,* 363 Mass. 718 (1973), to include a requirement that the testimony of an immunized witness be corroborated by evidence of the defendant's actual participation in the crime. [359-360]

Sufficient evidence corroborated the testimony of an immunized witness at the trial of an indictment of murder in the first degree and linked the defendant to the crime. [360]

INDICTMENT found and returned in the Superior Court Department on July 21, 1992.

The case was tried before *John A. Tierney,* J.

*Roger A. Cox* for the defendant.

*John E. Bradley,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. At issue is whether G. L. c. 233, § 20I, requires that the testimony of an immunized witness be corroborated by evidence of the defendant's actual participation in the crime. The defendant, Stephen Fernandes, claims that his conviction of murder in the first degree was based primarily on the evidence of an accomplice who was testifying under a grant of immunity. He asserts that the immunized witness's testimony was insufficient to establish his actual participation in the crime. The defendant asks us to modify our holding in *Commonwealth* v. *DeBrosky,* 363 Mass. 718 (1973), to include a requirement that the corroboration of an immunized witness's testimony include evidence of the defendant's actual participation in the crime. We decline to modify our holding in *DeBrosky.* We affirm the defendant's conviction of murder in the first degree. We decline to exercise our power under G. L. c. 278, § 33E, in favor of the defendant.

We set forth the facts in the light most favorable to the Commonwealth. See *Commonwealth* v. *Scanlon*, 373 Mass. 11, 19 (1977); *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975). The victim was shot numerous times at approximately 2:15 A.M. on November 3, 1991. The victim was seated in the driver's seat in a parked motor vehicle outside his mother's apartment in Brockton. The victim's cousin, Jesse Starks, was seated in the front passenger seat. Starks did not see the individuals who fired the twenty to thirty gunshots because he slumped down in his seat to avoid being shot. The autopsy showed that four bullets struck and killed the victim.

The immunized witness said that he had attended the party on the night of the shooting along with the defendant and others. At some point, the defendant told the immunized witness that he was "sick of" the victim because the victim had pulled a gun on the defendant earlier that week or the week before. The defendant said that he wanted to go to the east side of Brockton with a group of others and "wet them bitches up," meaning that they wanted to kill the victim and his friend. The immunized witness saw that the defendant had a Glock nine millimeter handgun in his possession, "a black [nine millimeter]. A regular gun."[1] Several other members of the defendant's group also had handguns.

The immunized witness testified that he drove four others to "the eastside projects." They followed behind another vehicle carrying four other people, including the defendant. When they arrived at the projects, the two drivers stayed by their vehicles while the others walked into the projects. The immunized witness heard one gunshot, then a flurry of shots, and then the defendant and the others came running back to the parked vehicles. The group drove away.

The immunized witness also recounted the details of the meeting the following day at the apartment of the other driver. The defendant was present, as were the others involved in the shooting. The group discussed what to do if "the cops came around." They also discussed getting the guns out of the home of a girl friend of one of the group members.

Evidence from other sources showed that the victim and the defendant had been in an argument two weeks before the shooting; the defendant told Starks approximately one week before the shooting that he was "going to get" the victim and

---

[1]The immunized witness used both descriptions during his testimony.

Starks; the defendant and a codefendant had attended a party in Brockton on the night of the shooting and the codefendant had a gun in his possession; the defendant left the party with a group of others in two cars, one of which was driven by the immunized witness.

The Commonwealth also presented the testimony of the roommate of the driver of the second car that transported the defendant and his friends from the party on the night of the murder. According to this witness, the group went into one of the bedrooms in his apartment, but this witness was told to stay out because the meeting did not concern him. He overheard some of the conversation from the room which included a discussion about what to do with certain guns and who to "blame it on." One person suggested that the group should blame it on "some kids from Boston."

General Laws c. 233, § 20I, provides: "No defendant in any criminal proceeding shall be convicted solely on the testimony of, or the evidence produced by, a person granted immunity under the provisions of [§ 20E]." The defendant urges us to reconsider our decision in *DeBrosky, supra,* and require some proof of the defendant's actual participation in the crime to corroborate the testimony of an immunized witness.

"The purpose of the statute is to require support for the credibility of the immunized witness. That support may come as much in the form of corroboration of evidence of the commission of the crime as it does from proof that the defendant was a participant." *DeBrosky, supra* at 730, citing J. Wigmore, Evidence § 2059, at 327 (3d ed. 1940). We decline to modify our holding in *DeBrosky.*

The policy basis of evaluating credibility remains the most important factor behind the statute. Cases from other States support this view.[2] See, e.g., *Turner* v. *State,* 294 Md. 640, 642-645 (1982); *People* v. *Cunningham,* 48 N.Y.2d 938, 940 (1979) ("evidence corroborating accomplice testimony 'need not prove the

---

[2]Some States have statutes that have language specifically requiring corroborating evidence linking the defendant to the commission of the crime. See J. Wigmore, Evidence § 2056, at 327 n.10 (3d ed. 1940). The language of G. L. c. 233, § 20I, does not establish that requirement. See *Commonwealth* v. *DeBrosky,* 363 Mass. 718, 730 (1973).

commission of the crime' ''; all that is necessary is that the evidence "satisfies the jury that the accomplice is telling the truth").[3]

We have said that to provide the requisite credibility, "there must be some evidence in support of the testimony of an immunized witness on at least one element of proof essential to convict the defendant." *Scanlon, supra* at 19, quoting *DeBrosky, supra* at 730. We agree with the Commonwealth that the corroborating evidence is more than sufficient. It not only corroborates the essential elements needed to convict the defendant but also links this defendant to the crime. Starks testified that he witnessed an argument between the defendant and the victim two weeks prior to the murder. A week later the defendant told Starks that he (the defendant) was going to "get" the victim. Another witness saw the defendant get into one of the two cars that the immunized witness claimed went to the place where the murder was committed. Two witnesses corroborated the immunized witness's testimony that there was a barrage of gunfire. A witness corroborated the events of the meeting of a group including the defendant on the day after the murder. The group discussed guns and on whom to blame the murder. In short, there was sufficient evidence to corroborate the immunized witness's testimony and link the defendant to the crime. The evidence corroborated the immunized witness on unlawful killing, malice, and deliberate premeditation. There was more than sufficient corroboration.

We have reviewed the record and conclude that the interests of justice do not require the entry of a verdict of a lesser degree of guilt or a new trial.

*Judgment affirmed.*

---

[3]New York's statute, which, in this context, requires "corroborative evidence tending to connect the defendant with the commission of [an] offense," N.Y. Crim. Proc. Law § 60.22(1) (1970), is intended "to protect the defendant against the risk of a motivated fabrication, to insist on proof other than that alone which originates from a possibly unreliable or self-interested accomplice" and not merely to "bolster[] the testimony of the accomplice." *People* v. *Hudson*, 51 N.Y.2d 233 (1980).