NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11997


COMMONWEALTH  vs.  JAIME RESENDE.



Plymouth.     September 7, 2016. - January 3, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Armed Home Invasion.  Armed Assault with Intent to Rob.
    Practice, Criminal, Duplicative convictions, Double
    jeopardy, Verdict, Confrontation of witnesses, Argument by
    prosecutor.  Evidence, Statement of codefendant, Immunized
    witness, Corroborative evidence.  Constitutional Law,
    Confrontation of witnesses, Double jeopardy.




Indictments found and returned in the Superior Court Department on September 21, 2007.

The cases were tried before Richard J. Chin, J., and a motion for a new trial was heard by him; certain of the cases were retried before Charles J. Hely, J.; and motions to reinstate a conviction and for release from unlawful restraint were heard by Richard J. Chin, J.

The Supreme Judicial Court granted an application for direct appellate review.


Jonathan Shapiro (Molly Gayle Campbell with him) for the defendant.
Mary E. Lee, Assistant District Attorney, for the Commonwealth.

David Lewis, Anthony Mirenda, & Richard G. Baldwin, for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

GAZIANO, J.  In 2010, a Superior Court jury convicted the defendant of murder in the first degree on a theory of felony-murder for his role in the shooting death of Nelson Pina.  The jury also convicted him of armed home invasion and armed assault with intent to rob.  The defendant filed a motion for a new trial, arguing, among other things, that the judge should have provided the jury with a felony-murder merger instruction.  The trial judge, who heard the motion, determined that a new trial was necessary on the felony-murder conviction, but did not disturb the convictions of armed home invasion and armed assault with intent to rob.  At his 2015 retrial, this time on the single charge of felony-murder, a second jury found the defendant not guilty.

In this appeal, the defendant challenges the convictions at his first trial of armed home invasion and armed assault with intent to rob.  He argues, on double jeopardy grounds, that he cannot be guilty of those charges because the second jury acquitted him of felony-murder, predicated upon the same underlying felonies.  He also argues that the felony convictions should not stand because the admission of an incriminating statement from a nontestifying codefendant violated his

constitutional right to confront the witnesses against him; the jury were permitted to convict based solely on the uncorroborated testimony of an immunized witness; and the prosecutor's closing argument contained statements that were unsupported by the record.  For the reasons that follow, we affirm the defendant's convictions.

1.  Facts.  We recite the facts that the jury could have found at the first trial.  In November, 2006, the defendant devised a plan to go to Nelson Pina's Brockton residence and rob him of cash and drugs.  The defendant recruited Vernon Newbury, a person he knew from the sale of illegal drugs, to assist with the robbery.  The defendant also asked Newbury to find others to assist in the commission of the robbery.  Newbury, in turn, contacted Kenston Scott, his cousin, who agreed to help rob Pina.[1]

On the night of November 16, 2006, the defendant, Scott, Newbury, Eric Davis, and the defendant's brother all met at the house of another of Newbury's cousins in Brockton.  They smoked marijuana and discussed the robbery.  After ten to fifteen minutes, the group drove toward the victim's house in three vehicles.  The defendant drove his own automobile with his brother, Scott drove in another vehicle with Davis, and Newbury

---

[1] At trial, Newbury testified under a grant of immunity and was a key witness against the defendant.

drove alone in a third vehicle, but stopped before he reached the victim's house.

When they arrived at the victim's house, Scott raised the hood of his vehicle, turned on its emergency flashing lights, and went to the victim's front door.  Julia Codling, the victim's girl friend, went to the door with the victim.  Through the closed door, Scott told them that his automobile had broken down and asked to borrow a telephone to call for help.  Codling did not recognize Scott, describing him only as a "black male with a hat with designs."  The victim got his dog from the basement, then opened the front door and gave Scott a cordless telephone.  Scott began walking back to his vehicle carrying the telephone.  As Scott approached his vehicle, another man got out and Scott said, "He's here."  Scott walked back toward the house.  Coddling heard a struggle at the front door, followed by an exchange of four gunshots.  She telephoned 911 to report that shots had been fired, and police arrived shortly thereafter.

The defendant drove from the scene, passing Newbury on the way.  Scott was wounded, but he left the scene, leaving his vehicle behind.  Newbury met the defendant after the incident.  The defendant initially told Newbury, "Things got fucked up and shots rang out."  Newbury drove past the victim's house and saw Scott's vehicle with its hood up and lights flashing.  After that, Newbury drove to the defendant's brother's house in

Quincy, where he reconvened with the defendant, the defendant's brother, and Scott, who was bleeding.

When police arrived, they found the victim lying on the floor near the entrance, dead. The front door was damaged, and there were spent projectiles, fired from two different guns, near the doorway. In the basement, police found $48,000 in cash and two containers with small amounts of marijuana, as well as a handwritten ledger they believed was a record of drug transactions.

During the course of the investigation, police obtained records showing a call between cellular telephones associated with Scott and the defendant. The police also obtained telephone records showing calls between the telephones belonging to the defendant and Newbury, in the hours immediately before and after the shooting. They also determined that a baseball hat found at the scene and a bloody sweatshirt found nearby each contained Scott's deoxyribonucleic acid (DNA). Police spoke with a witness in the neighborhood who said that there were two individuals outside the victim's house at the time of the shooting. Several months later, police spoke with Scott, who told them that he had been at the victim's house to purchase drugs on the night of the shooting, but that someone else had done the shooting.

2.  Prior proceedings.  A grand jury returned indictments charging the defendant with murder in the first degree, armed home invasion, and armed assault with intent to rob.  At the defendant's first trial (a joint trial with codefendant Scott), the Commonwealth proceeded on theories of murder in the first degree by deliberate premeditation, and felony-murder with armed home invasion and armed robbery or attempted armed robbery as the predicate felonies.  The jury found the defendant guilty of felony-murder with the predicate felony of armed home invasion; armed home invasion; and armed assault with intent to rob.[2]  At sentencing, the judge dismissed the conviction of armed home invasion as duplicative.  See Commonwealth v. Alcequiecz, 465 Mass. 557, 558 (2013).

The defendant appealed from his convictions and filed a motion for a new trial.  His direct appeal was stayed pending

---

[2] Kenston Scott, the codefendant, was convicted at the first trial of murder in the first degree on a theory of felony-murder, with the predicate felony of armed home invasion, and possession of a firearm without a firearms identification card.  See Commonwealth v. Scott, 472 Mass. 815, 816 (2015).  His motion for a new trial was allowed with respect to the felony-murder conviction, on the ground of improper jury instructions on felony-murder.  Scott pursued an interlocutory appeal to challenge the judge's ruling that the evidence was sufficient to support a finding of two separate and distinct assaults.  Id. at 815.  He maintained that he was entitled acquittal on the felony-murder charge on the ground of insufficient evidence.  Id. at 817-818.  We determined that the evidence was sufficient for a jury to conclude that there were two independent assaults, and we affirmed the judge's order denying the motion for a finding of not guilty on the charge of felony-murder with armed home invasion as the predicate felony.  See id. at 823, 826.

resolution of the motion for a new trial.  The trial judge concluded that the jury instructions on felony-murder were improper because they did not contain a required merger instruction pursuant to Commonwealth v. Bell, 460 Mass. 294, 302-303 (2011), S.C., 473 Mass. 131 (2015), cert. denied, 136 S. Ct. 2467 (2016), and Commonwealth v. Kilburn, 438 Mass. 356, 361 (2003), and allowed the defendant's motion for a new trial on that ground.  He denied the other claims.  The defendant appealed from the denial of the other claims, but later withdrew that appeal.  He then filed a motion to dismiss in the Superior Court, asserting that a new trial would violate the protections against double jeopardy.  A different Superior Court judge denied that motion.

At the defendant's second trial, the Commonwealth proceeded on theories of murder by means of deliberate premeditation, felony-murder predicated on the felony of armed home invasion, attempted armed robbery, and unlawful possession of a firearm. At the close of the evidence, the judge declined to instruct the jury on deliberate premeditation, felony-murder predicated on armed home invasion, and felony-murder in the second degree predicated on unlawful possession of a firearm.  The judge instructed on felony-murder in the first degree with the predicate offenses of attempted armed robbery and attempted

unarmed robbery.  The jury found the defendant not guilty on the indictment charging murder in the first degree.

The defendant filed a motion for release from unlawful restraint, arguing that the felony convictions from his first trial should be overturned because the second jury had acquitted him of felony-murder.  That motion was denied.  The Commonwealth moved to reinstate the vacated conviction of armed home invasion, on the ground that it was no longer duplicative.  That motion ultimately was allowed.  The defendant appealed from the denial of his motion for release from unlawful restraint, the allowance of the Commonwealth's motion to reinstate the conviction of armed home invasion, and the initial convictions of armed home invasion and armed assault with intent to rob.  The appeals were consolidated and we allowed the defendant's motion for direct appellate review.

3.  Double jeopardy and inconsistent verdicts.  The defendant contends that the convictions of armed home invasion and armed assault with intent to rob must be vacated because they violate the protection against double jeopardy.  In the defendant's view, the Commonwealth had two options after the first trial judge allowed the motion for a new trial on the murder charge.  First, the Commonwealth could have declined to prosecute the defendant for murder, thereby preserving the convictions of armed home invasion and armed assault with intent

to rob. In the alternative, the Commonwealth could have elected to retry him on all of the charges from the first trial. The defendant argues that, as a result of the acquittal on the felony-murder charge, he has been deemed innocent of all of the felony charges, because they involved the same acts that underlay the murder indictment.

The defendant's appeal raises issues of double jeopardy and inconsistent verdicts. The prohibition against double jeopardy, provided by the Fifth Amendment to the United States Constitution, as well as by the common and statutory law of the Commonwealth, protects a defendant against multiple prosecutions for the same offense. See Commonwealth v. Vanetzian, 350 Mass. 491, 493-494 (1966). "[C]ourts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." Brown v. Ohio, 432 U.S. 161, 165 (1977). See Commonwealth v. Clemmons, 370 Mass. 288, 294-295 (1976).

Continuing jeopardy, on the other hand, exists where a verdict is vacated, either through a direct appeal or by the allowance of a motion for a new trial, and the defendant is retried on that charge. Commonwealth v. Burke, 342 Mass. 144, 149 (1961). See Marshall v. Commonwealth, 463 Mass. 529, 538 (2012) ("the prohibition against double jeopardy . . . does not,

however, necessarily bar a retrial where a conviction has been set aside on appeal" [citations omitted).

In the circumstances here, the judge properly determined that double jeopardy did not prohibit retrial on the felony-murder charge. The allowance of the defendant's motion for a new trial placed him under continuing jeopardy during the pendency of the prosecution, rather than placing him at risk of double jeopardy, and the Commonwealth was entitled to a retrial. Where some, but not all, of a defendant's convictions are overturned on appeal, double jeopardy principles do not require the Commonwealth to choose between a retrial on all of the charges, including the verdicts that stand after appeal, or no retrial at all. See Bell, 460 Mass. at 309-310; Commonwealth v. Plunkett, 422 Mass. 634, 641 (1996). Here, the defendant's felony-murder conviction was vacated and set aside, and his independent conviction of armed assault with intent to rob was not. Retrial on the felony-murder charge therefore did not violate double jeopardy protections.

The defendant also argues that the felony convictions from the first trial should be vacated as inconsistent with the verdict of not guilty of felony-murder. In cases involving verdicts returned by the same jury, "the rule is well established in criminal cases that mere inconsistencies in verdicts, one of which is an acquittal, will not render the

verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury." Commonwealth v. Scott, 355 Mass. 471, 475 (1969). While legally inconsistent verdicts may not stand, factually inconsistent verdicts may. Commonwealth v. Medeiros, 456 Mass. 52, 57-58 (2010).

"In limited circumstances," where the verdicts are legally inconsistent, they must be set aside. Id. at 58. For instance, verdicts of guilt involving mutually exclusive crimes, where it is impossible for the Commonwealth to prove the elements of both offenses with respect to a particular defendant, must be vacated and set aside. See id. (conviction of one purported coconspirator could not stand, where all other coconspirators were acquitted at same trial); Commonwealth v. Carson, 349 Mass. 430, 434-436 (1965) (convictions of larceny of shares of stock and larceny of proceeds from sale of same shares could not stand).

On the other hand, factual inconsistencies in verdicts "do not afford a ground for setting aside a conviction as long as the evidence is sufficient to support a conviction on the count on which the guilty verdict was reached." Commonwealth v. Pease, 49 Mass. App. Ct. 539, 542 (2000). Verdicts are factually inconsistent when, "considered together, [the verdicts] suggest inconsistent interpretations of the evidence

presented at trial." Commonwealth v. Gonzalez, 452 Mass. 142, 151 n.8 (2008). See Commonwealth v. Hamilton, 411 Mass. 313, 323-324 (1991) (guilty verdict of armed robbery by means of shotgun could stand, where same jury found defendant not guilty of carrying dangerous weapon [same shotgun]).

Here, the defendant's conviction of armed home invasion is neither legally nor factually inconsistent with the acquittal of felony-murder. We do not agree with the defendant's position that he was found "innocent" of this offense at his second trial. The charge of armed home invasion, by itself, was not before the jury at this trial. As for the charge of felony-murder, the judge declined to instruct the jury on armed home invasion as a predicate felony, because he concluded that the armed home invasion had merged with the act of violence that led to the victim's death, and that there was no separate assault apart from that act. He observed that, "[M]y concern is that under the case law, and in particular Commonwealth v. Bell, they use the language that there must be a separate and distinct assault. . . . I'm not going to submit armed home invasion to the jury as a basis for a felony-murder verdict. . . . I do not believe that it should be submitted to the jury under the principles discussed in Commonwealth v. Bell."

As a result of the judge's ruling, the jury were not instructed on the elements of armed home invasion, as a

predicate crime of felony-murder, and accordingly did not return a verdict on this offense.  The defendant's acquittal of felony-murder was not, therefore, an implicit finding of not guilty of armed home invasion.

Nor is the previous conviction of armed assault with intent to rob legally or factually inconsistent with the acquittal on the felony-murder indictment.  "[T]here are circumstances in which a jury may properly convict on the underlying felony and yet acquit on felony-murder."  Commonwealth v. Blackwell, 422 Mass. 294, 300 (1996).  See Scott, 355 Mass. at 475 (robbery conviction not legally inconsistent with felony-murder acquittal even where victim died as result of injuries she suffered during robbery).

At the defendant's second trial, the jury considered the underlying felony of attempted robbery.  The jury did not consider the felony of armed assault with intent to rob.  There can be no "acquittal" of a charge never presented to a jury.

The defendant also argues that the verdicts are inconsistent, and cannot stand, because two different juries returned different verdicts based upon the same evidence.  We do not agree.  As the Maryland Court of Appeals has commented, "the rule of consistency loses much of its force in the case of separate trials because different verdicts may well . . . [be] due solely to the different composition of the two juries, . . .

[or] a variety of other circumstances, including a difference in the proof offered at trial" (quotations omitted). State v. Johnson, 367 Md. 418, 425-426 (2002), quoting Commonwealth v. Byrd, 490 Pa. 544, 552 (1980). In Johnson, supra at 430, the Maryland court affirmed verdicts returned by two different juries, where, at a trial separate from his asserted coconspirators, the defendant was found guilty of conspiracy, even though all the purported coconspirators had been found not guilty at their joint trial. In our view, this rationale is compelling.

There are many reasons why the second jury could have found the defendant not guilty of felony-murder other than because they concluded that the Commonwealth failed to prove that the defendant committed the predicate felony. See, e.g., Gonzalez, 452 Mass. at 151; Blackwell, 422 Mass. at 303-304 (Liacos, C.J., dissenting); Commonwealth v. Sherry, 386 Mass. 682, 699 (1982), overruled on another ground by Commonwealth v. King, 445 Mass. 217 (2005). We reject the defendant's argument that fundamental fairness requires this court to vacate the convictions of armed home invasion and armed assault with intent to rob. The defendant was found guilty of both offenses by a fair and impartial jury in the first trial, and we would be speculating as to what another jury found in a separate trial. The second trial resulted in a felony-murder acquittal, and the defendant

was spared a sentence of life imprisonment.  The second trial, however, cannot spare the defendant from the consequences of convictions properly decided by a different jury.

4.  Remaining arguments.[3]  Having determined that the defendant's felony convictions were not invalidated by the subsequent felony-murder acquittal, we address the defendant's claims of error in the first trial.

a.  Bruton issue.  The codefendant, Scott, did not testify, but his statement to police was played for the jury.  In that statement, Scott said that, at the time of the shooting, he had been present at the victim's house to purchase drugs.  Scott told police that, shortly after he arrived at the victim's house, "some guys" ran around a corner and "shots were fired." He said that he had had no involvement in a robbery and did not kill anyone, but that he had been at "the wrong place, at the wrong time."  When pressed about his whereabouts immediately prior to the shooting, Scott said that he went to his cousin's house in Brockton, where he encountered two men he did not know. The group sat around and smoked marijuana for approximately

---

[3] The Commonwealth contends that the defendant waived his appellate rights with respect to his other claims.  According to the Commonwealth, the waiver occurred when the defendant withdrew his appeal from the denial, in part, of his motion for a new trial.  After carefully reviewing the docket entries, and the status reports the defendant filed with the court, we conclude that the record does not support the conclusion that the defendant waived his appellate rights.

fifteen to thirty minutes.  Scott then drove alone, in his own vehicle, to the victim's house to purchase drugs.  The men who had been at his cousin's house left in a different vehicle.

The defendant contends that the introduction of Scott's statement violated his rights, under the Sixth and Fourteenth Amendments to the United States Constitution, to confront and cross-examine the witnesses against him.  See Bruton v. United States, 391 U.S. 123, 126 (1968).  The United States Supreme Court held in that case that the admission of a nontestifying codefendant's statement, naming the defendant as a participant in the crime, violated the defendant's right to confrontation under the Sixth Amendment.  Id. at 123-124, 126.  The Court observed that testimony that expressly inculpates a defendant is so "powerfully incriminating" that it cannot be cured by a limiting instruction to the effect that the jury may only consider the statement as evidence against the codefendant.  Id. at 135-136.  See Commonwealth v. Rivera, 464 Mass. 56, 69, cert. denied, 133 S. Ct. 2828 (2013) ("[o]ur considerations of the Bruton rule mirror the Federal standard").

The United States Supreme Court subsequently has extended its holding in the Bruton case to prohibit the introduction of a nontestifying codefendant's statement that directly inculpates a defendant even where the defendant's name is not mentioned. Gray v. Maryland, 523 U.S. 185, 192 (1998).  See Commonwealth v.

Bacigalupo, 455 Mass. 485, 492 (2009) (introduction of nontestifying codefendant's statement that his "friend" was present at shooting was sufficiently direct reference to defendant to violate his right to confrontation, notwithstanding limiting instruction).

Where a nontestifying codefendant's statement does not inculpate a defendant directly, but does inculpate the defendant when combined with other evidence, a limiting instruction may be sufficient to cure the prejudice. Rivera, 464 Mass. at 70 ("The law is clear, however, that inferential incrimination can be properly cured by a limiting instruction"). In that case, we concluded that, where the judge had given an appropriate limiting instruction, there was no error in the admission of a nontestifying codefendant's redacted statement that did not directly reference the defendant, but incriminated him "only to the extent that the jury accepted other evidence against him that places him at the scene [of the crime]." Id. at 70-71. Similarly, a nontestifying codefendant's statement that "other members" of the codefendant's gang had been involved with a killing, accompanied by a limiting instruction, did not violate the defendant's right to confrontation because the statement did not refer directly to him. Commonwealth v. Vasquez, 462 Mass. 827, 843-844 (2009).

In this case, as in Rivera, 446 Mass. at 70-71, Scott's statement was not so powerfully incriminating as to require its exclusion from the joint trial. The statement was probative and significant to the Commonwealth's case because it corroborated Newbury's testimony that the defendant, Scott, and others met in Brockton prior to the robbery; that Scott did not know the other individuals; that they all smoked marijuana; and that the "two other guys" left the house and drove off in different vehicles. Scott's statement did not directly implicate the defendant or name him, expressly or by implication, as one of the "guys" who ran around the corner and started shooting the victim. Scott did not tell police, at any later point in his interview, that the unknown men gathered at his cousin's house were the same individuals who "came around the corner and started shooting." In sum, the statement tended to inculpate the defendant only when considered with other, properly introduced evidence. See Vasquez, 462 Mass. at 843-844.

The defendant objected to the use of Scott's statement as corroboration of Newbury's testimony. Defense counsel argued that "later . . . the district attorney [would argue] that . . . Scott['s statement] is corroborating the testimony of Newbury and putting these other guys who would be [the defendant] and his brother at a meeting with . . . Scott prior to this incident." The judge commented that it would be impermissible

for the jury to consider the statement for such a purpose, and the prosecutor agreed that he would not make use of the statement to corroborate Newbury's testimony. Counsel replied, "Thank you." He did not later object when the Commonwealth introduced the statement, and he did not request a limiting instruction. In his closing argument, the prosecutor did not refer to Scott's statement as corroborative evidence.

Although the prosecutor and defense counsel agreed at that sidebar hearing that Scott's statement could not be used against the defendant, the judge did not provide the jury with any limiting instruction on its use. This was error. The judge should have instructed the jury that they could not consider Scott's statement as evidence against the defendant. See Rivera, 464 Mass. at 68, 71; Vasquez, 462 Mass. at 841, 844. Because the defendant did not object at trial and did not request a limiting instruction, we review for a substantial risk of a miscarriage of justice. Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967).

We conclude that the improper admission of Scott's statement resulted in no such risk. The statement was cumulative of other, properly admitted evidence. See Commonwealth v. MacKenzie, 413 Mass. 498, 510 (1992). There was other testimony that multiple individuals had been at the victim's house when the shooting occurred. Additional, properly

admitted evidence, including Newbury's testimony and cellular telephone records, also suggested that the defendant had been at the scene of the shooting.

b. Testimony of immunized witness. The defendant argues further that his conviction must be overturned because the Commonwealth did not introduce evidence to corroborate the testimony of its immunized witness, Newbury. Pursuant to G. L. c. 233, § 20I, "No defendant in any criminal proceeding shall be convicted solely on the testimony of, or the evidence produced by, a person granted immunity." See Commonwealth v. Fernandes, 425 Mass. 357, 360 (1997), quoting Commonwealth v. Scanlon, 373 Mass. 11, 19 (1977) ("We have said that to provide the requisite credibility, 'there must be some evidence in support of the testimony of an immunized witness on at least one element of proof essential to convict the defendant'"). The corroborating evidence need not connect the defendant to the crime, but must support at least one element of the crime. See Fernandes, supra at 359; Commonwealth v. DeBrosky, 363 Mass. 718, 730 (1973).

Contrary to the defendant's assertions, the jury heard sufficient evidence to corroborate Newbury's testimony about the events of the night of the shooting. The victim was found dead, immediately inside his front doorway, with a gun on the floor between his legs. Police found spent bullets, fired from two different guns, near the door. This evidence could support an

inference that the defendant's accomplice, Scott, was armed with a firearm and assaulted the victim by shooting him with it, satisfying two elements of the offenses of armed home invasion and armed assault with intent to rob. See G. L. c. 265, §§ 17, 18C. Investigators also noted damage to the front door of the victim's house, suggesting that an intruder struggled to push his way into the house, satisfying one element of armed home invasion. See G. L. c. 265, § 18C.

The defendant argues that the judge erred by not instructing the jury that they could not rely on the testimony of the immunized witness unless they first found that other evidence supported at least one element of the crime. The defendant did not request such an instruction, and did not object to its absence following the judge's charge. Therefore, we review for a substantial risk of a miscarriage of justice. Freeman, 352 Mass. at 563-564.

A judge is not required to instruct the jury that they cannot convict a defendant solely on the testimony of a particular immunized witness. See Commonwealth v. Brousseau, 421 Mass. 647, 655 (1996). "Rather we consider whether 'the charge, as a whole, adequately covers the issue.'" Commonwealth v. Dyous, 436 Mass. 719, 727 (2002), quoting Commonwealth v. Anderson, 396 Mass. 306, 316 (1985). In formulating an immunized witness instruction, a judge may instruct pursuant to

G. L. c. 233, § 20I, without naming a particular witness, that immunized witness testimony cannot serve as the sole basis for conviction. Dyous, supra. See Commonwealth v. Vacher, 469 Mass. 425, 440-441 (2014).[4]

In this case, the failure to provide an instruction that immunized witness testimony cannot serve as the sole basis for conviction did not constitute a substantial risk of a miscarriage of justice. The Commonwealth produced other evidence to corroborate Newbury's testimony concerning the defendant's participation in the botched robbery. Defense counsel cross-examined Newbury regarding the grant of immunity, and argued that the government handed this "shadowy figure" a "get-out-of-jail card" in exchange for "hang[ing] this on a 21-year-old kid [his client]." See Brousseau, 421 Mass. at 654 ("defense counsel vigorously cross-examined [the witness] and vigorously argued to [the] jury her lack of credibility" [citation omitted]). The judge's charge included general instructions regarding witness credibility, witness bias, and a

---

[4] In contrast, G. L. c. 277, § 63, requires that an indictment or complaint filed more than twenty-seven years after the commission of a rape of child offense "be supported by independent evidence that corroborates the victim's allegations." The corroboration must relate to the specific criminal act of which the defendant stands accused. Commonwealth v. White, 475 Mass. 724, 738 (2016). In a case brought under G. L. c. 277, § 63, a judge is required to instruct the jury "regarding the Commonwealth's obligation to provide independent evidence that related to the specific criminal acts at issue . . . ." White, supra at 742.

specific instruction that the jury could consider a grant of immunity in assessing witness credibility. Accordingly, the jury heard sufficient evidence to corroborate Newbury, and were instructed properly that the witness's testimony should be scrutinized in light of his grant of immunity.

c. Prosecutor's closing argument. The defendant maintains also that his convictions must be overturned because, in closing, the prosecutor made arguments that were not supported by the evidence. The defendant challenges, in particular, the prosecutor's statements that the defendant knew that the victim had drugs and money at his house because the victim entertained guests there, and that the defendant had had to recruit Scott to help with the robbery because he needed someone that the victim would not recognize, and the victim would have recognized the defendant. The defendant did not object to either of these statements at trial, so we review for a substantial risk of a miscarriage of justice. Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

The prosecutor's reference to the defendant knowing that the victim had large amounts of cash and drugs at his house because the victim frequently hosted guests was a permissible inference from the evidence. The victim's girl friend testified that there was a large amount of money in the house, and that the victim frequently entertained friends in the basement.

Newbury's testimony that the defendant called Newbury to tell him about the plan to rob the victim of money and drugs supports an inference that the defendant knew the victim had money and drugs in his house.

The prosecutor also told the jury, "See, [the defendant] is a Brockton guy . . . . They're going to rob a Brockton guy, a Cape Verde guy. He needs someone to do the job because . . . he was concerned that he might be recognized." This statement was not supported by any evidence at trial and should not have been made. See Commonwealth v. Colon, 449 Mass. 207, 224, cert. denied, 552 U.S. 1079 (2007). While there was testimony that both men lived in Brockton, there was no testimony concerning any prior relationship or a shared ethnic heritage.[5] Nonetheless, the judge properly instructed the jury that closing arguments are not "a substitute for the evidence," and that the jury had a duty to decide the case based on the testimony and exhibits entered in evidence. Commonwealth v. Benjamin, 399 Mass. 220, 223-224 & n.1 (1987), overruled on another ground by Commonwealth v. Paulding, 438 Mass. 1 (2002).

The defendant argues that the prosecutor's statement that the defendant chose Scott to assist in the robbery was particularly troubling because it provided a motive for the

_____

[5] The record is silent as to the ethnicity of both the defendant and the victim.

defendant to have involved Scott, and supported the Commonwealth's argument that the defendant was the mastermind. Although the prosecutor's remark was improper, it did not create a substantial risk of a miscarriage of justice. Motive is a collateral issue, and an impermissible inference with respect to motive does not necessarily amount to reversible error. See Commonwealth v. Perez, 444 Mass. 143, 152 (2005). Although the tenor of the remark was particularly unfortunate, and the remark should not have been made, it was a single statement made in the context of an otherwise proper closing argument.

Judgments affirmed.