Following a jury trial, the defendant, Michael Gonsalves, was convicted of assault and battery, assault and battery on a family or household member, and breaking and entering with intent to commit a misdemeanor (B & E).
 
 [2]
 
 On appeal, he contends that the verdicts cannot stand because (1) the evidence was insufficient to sustain a conviction for the B & E count, and (2) the assault and battery and B & E convictions were legally inconsistent. We affirm.
 

 Background
 
 . The jury could have found the following facts. Tiffany Tobey resided in a single-story house in Hyannis with her son and her boy friend of eight years, Raul Nieves. The defendant is the father of Tobey's son and was a close friend of Nieves at one time. Tobey had a court-ordered custody agreement with the defendant regarding visitation of their son.
 

 On November 17, 2015, at approximately 11:30 P.M. , Tobey was watching a movie with Nieves in the home. At this time, the defendant approached the front door of the house.
 
 [3]
 
 Tobey opened the door "a crack." The defendant told Tobey that "he heard an altercation on the street about [Tobey] and that he would like to speak with [her]." Tobey responded that she did not want to speak with him, but that if he wanted to speak with her, she would come outside. Tobey closed the door. Shortly thereafter, the defendant "pushed the door open" and "pushed [Tobey] ... on [her] chest" causing her to fall down. Nieves got up from the couch where he had been "laying," and the defendant "went charging for his legs." An altercation ensued during which the defendant bit Nieves on the nose. During the fight, Tobey yelled at the defendant to "get off" of Nieves. The defendant pulled her hair, and ripped hair out of her head. The altercation-from the knock on the door until the defendant left the house-lasted approximately "[a] minute and a half." When it had concluded, Nieves was covered with blood. Tobey telephoned 911. Police and paramedics came to the scene, and Nieves was later taken to the hospital.
 

 Barnstable police Officer Jeffrey Jackson was the first officer to arrive at the scene. He encountered Nieves on the road outside the house, and saw that he was bleeding from his nose. Officer Jackson then entered Tobey's home, and noted that "[i]t was in disarray, things knocked over." He also saw blood and hair on the floor. Photographs of the blood and hair were taken at the scene and ultimately entered in evidence at trial.
 

 Discussion
 
 . The defendant contends that the Commonwealth did not meet its burden to prove that he had the intent to commit a misdemeanor at the time of the breaking and entering.
 
 [4]
 
 See
 
 Commonwealth
 
 v.
 
 Poff
 
 ,
 
 56 Mass. App. Ct. 201
 
 , 203 (2002). We review the defendant's claims to determine "whether, after viewing the evidence in the light most favorable to the prosecution,
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
 
 Commonwealth
 
 v.
 
 Latimore
 
 ,
 
 378 Mass. 671
 
 , 677 (1979), quoting from
 
 Jackson
 
 v.
 
 Virginia
 
 ,
 
 443 U.S. 307
 
 , 318-319 (1979).
 

 Here, the evidence viewed in the light most favorable to the Commonwealth was sufficient to prove that the defendant intended to commit assault and battery at the time of entry. There was evidence from which a rational juror could have found that the defendant had an acrimonious relationship with the victims prior to the assault and battery. The evidence also showed that the defendant approached the house late at night; that he referenced an "altercation" involving Tobey that, the jury could infer, had concerned or upset him; and that Tobey only opened the door "a crack" before closing it on him. Following that, the defendant forced his way into the home, immediately shoved Tobey, dove at Nieves's legs, and attacked him. A reasonable juror could infer from all of this evidence, including the immediacy and aggression with which he shoved Tobey and attacked Nieves after entering the house, that the defendant had the intent to commit an assault at the time of entry. See
 
 Commonwealth
 
 v.
 
 Lewis
 
 ,
 
 346 Mass. 373
 
 , 377-378 (1963) (intent to commit a crime may be inferred from circumstantial evidence including the defendant's conduct).
 

 The defendant next argues that the B & E conviction and the assault and battery convictions were legally inconsistent because the assault and battery convictions were based on a finding of recklessness, whereas the B & E conviction was grounded on intentional conduct. We disagree.
 

 " 'In limited circumstances,' where the verdicts are legally inconsistent, they must be set aside. For instance, verdicts of guilt involving mutually exclusive crimes, where it is impossible for the Commonwealth to prove the elements of both offenses with respect to a particular defendant, must be vacated and set aside."
 
 Commonwealth
 
 v.
 
 Resende
 
 ,
 
 476 Mass. 141
 
 , 147 (2017) (citation omitted).
 

 Here, contrary to the defendant's argument, the verdicts are not "impossible at law."
 
 Commonwealth
 
 v.
 
 French
 
 ,
 
 462 Mass. 41
 
 , 46 (2012). It was not legally inconsistent for the jury to conclude that the defendant had formed the intent to commit an assault and battery at the time of the B & E, but then committed a reckless battery.
 
 [5]
 
 As discussed
 
 supra
 
 , the jury could have concluded that the defendant broke and entered into Tobey's home with the intent to commit an assault and battery upon her. The jury would also have been warranted in finding that, upon entering and seeing Nieves, the defendant shoved Tobey, charged at Nieves's legs, and pulled Tobey's hair, all in a reckless manner, causing physical injury. See
 
 Commonwealth
 
 v.
 
 Welch
 
 ,
 
 16 Mass. App. Ct. 271
 
 , 275 (1983). See also
 
 Commonwealth
 
 v.
 
 White
 
 ,
 
 363 Mass. 682
 
 , 684 (1973) ("In numerous instances this court, upon analyzing the particular facts and the crimes charged, has concluded that allegedly inconsistent verdicts in fact present no inconsistency because the verdicts are capable of logical reconciliation"). Contrast
 
 Commonwealth
 
 v.
 
 Nascimento
 
 ,
 
 421 Mass. 677
 
 , 683 (1996).
 

 Judgments affirmed
 
 .
 

 The defendant was charged with breaking and entering in the nighttime with intent to commit a felony. After the close of evidence and before closing arguments, the Commonwealth moved to amend the charge to breaking and entering with intent to commit a misdemeanor. After confirming on the record that the defendant had no objection, the judge allowed the motion.
 

 The defendant was accompanied by another male who also lived across the street from Tobey's house.
 

 The defendant does not challenge the sufficiency of the evidence of (1) breaking, (2) entering, or (3) a building. He solely challenges the sufficiency of the evidence as to the element of intent to commit a misdemeanor therein. We note that the judge correctly instructed the jury that the Commonwealth was required to prove "that the defendant intended to commit a misdemeanor at the time he was alleged to have broken and entered the building in question." See
 
 Commonwealth
 
 v.
 
 Poff
 
 ,
 
 56 Mass. App. Ct. 201
 
 , 203 (2002).
 

 To prove "reckless" assault and battery, the Commonwealth must show: "(1) that the defendant's conduct involve[d] a high degree of likelihood that substantial harm will result to another, or that it constituted a disregard of probable harmful consequences to another,
 
 and
 
 (2) that, as a result of that conduct, the victim suffered some physical injury."
 
 Commonwealth
 
 v.
 
 Welch
 
 ,
 
 16 Mass. App. Ct. 271
 
 , 275 (1983) (quotation omitted).