NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-683

COMMONWEALTH

vs.

JOSE BALCACER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from the denial of his second motion for a new trial, and a related motion for postconviction discovery, with respect to his 2015 convictions for drug trafficking. He presses several arguments for why a new trial is warranted, but primarily contends that (1) newly discovered evidence, which he claims the Commonwealth improperly withheld, casts doubt on his convictions, (2) the Commonwealth elicited false testimony from a trial witness, and (3) the defendant's previous attorneys rendered ineffective assistance at trial, and on a prior appeal before this court. We affirm.

Background. The defendant was convicted of two counts of heroin trafficking in May 2015. In affirming the denial of the defendant's first motion for a new trial, this court described

the underlying facts as follows (quoting the decision of the

motion judge).

> "The charges ar[o]se out of the planned controlled
> purchase of a half-kilogram of heroin, the arrest of the
> [defendant] and co-defendant Robert Navarro ('Navarro'),
> the seizure of heroin intended for the controlled purchase,
> the search of the [defendant]'s person and vehicle, the
> execution of two search warrant[s] [] at 2 McIntyre Court,
> Peabody (the 'premises'), and seizure of additional heroin.
> A regional drug task force used a confidential informant
> (the 'CI') to set up a series of controlled purchases from
> Navarro.  On October 16, 2013, after three earlier
> controlled purchases and provision to the CI of two
> 'samples' of heroin, [the defendant] and Navarro drove
> together from 2 McIntyre Court to Macys in the North Shore
> Mall, the agreed-upon meeting place for the next controlled
> purchase.  [The defendant] drove a white Mitsubishi
> registered to his wife (the 'Mitsubishi').[]  They walked
> into the store together, and split while Navarro met with
> and showed the CI the contents of a shopping bag that
> appeared to be the agreed-upon half-kilo of heroin.  Upon a
> signal from the CI and observation of a brief verbal
> exchange between Navarro and [the defendant], officers
> arrested Navarro, confirmed the contents of the shopping
> bag found at his feet, and then arrested [the defendant], a
> short distance away in the same section of Macys.  The
> substance recovered from the shopping ba[g] was later
> tested and found to be heroin . . . .

> "During a search of [the defendant]'s person incident
> to his arrest, a set of keys was seized from his front
> pants pocket ('first set of keys').  Officers immediately
> responded to the white Mitsubishi, which [the defendant]
> and Navarro had left in the parking lot before entering
> Macys.  The vehicle was unlocked and officers entered the
> vehicle and found a second set of keys in the center
> console ('second set of keys').  Officers then took the two
> sets of keys and went [to] the premises (i.e., 2 McIntyre
> Court).  The first set of keys contained a key that opened
> the door to the second floor apartment, which police had
> earlier established to be [the defendant]'s residence.  The
> second set of keys contained separate keys that opened the
> second floor apartment and the first floor apartment.

2

"A search warrant was obtained to search the first and second floor apartments at the premis[]es.  No potential evidence was seized under the warrant from the second floor apartment.  Over 100 grams of heroin, scales, a kilo press, cutting agent, and packaging materials were seized under the warrant from the first floor apartment.  The substance recovered from the first floor apartment was later tested and found to be heroin . . . ."

The defendant appealed his conviction and, in May 2018, filed his first motion for a new trial.  A Superior Court judge (who was not the trial judge) denied the motion without an evidentiary hearing.  The defendant appealed, and this court consolidated the defendant's two appeals.  In that first consolidated appeal, the defendant primarily argued that he received ineffective assistance of counsel because defense counsel did not, among other things, move to dismiss the defendant's indictments based on purportedly false grand jury testimony.  He also argued that the "Commonwealth elicited improper expert testimony, the prosecutor's . . . closing argument created a substantial risk of a miscarriage of justice, and the judge erred in denying his motions to suppress evidence."  A panel of this court rejected those arguments in an unpublished decision.

In September 2021, the defendant filed a second motion for a new trial and a related motion for postconviction discovery, the denials of which are the subject of the present appeal.  The defendant raised a host of arguments, primarily falling into three categories.  First, he made several arguments related to

3

one Sergio Hernandez, a former tenant of the first-floor apartment at 2 McIntyre Court, who did not testify at trial. The defendant presented an affidavit from Hernandez in which Hernandez avers that he was a tenant in the first-floor apartment until three to four weeks before the defendant's arrest, that he saw no evidence of drug dealing during his time in the apartment, and that he told this to a prosecution interviewer prior to trial. The defendant claimed (1) that this evidence was "newly discovered," (2) that the Commonwealth withheld this exculpatory evidence regarding Hernandez, and (3) (alternatively) that defense counsel rendered ineffective assistance by not calling Hernandez at trial. Second, the defendant argued that the Commonwealth knowingly elicited perjury from a trial witness, Drug Enforcement Agency special agent Glen Coletti. Finally, the defendant raised several additional claims of ineffective assistance of his trial counsel and prior appellate counsel. A different Superior Court judge (who also was not the trial judge) denied the defendant's motions without an evidentiary hearing.

Discussion. On appeal, the defendant presses the same arguments made in his second new trial motion. "Where, as here, the motion judge did not preside at trial, and no evidentiary hearing was held, we 'examine [his] conclusion only to determine whether there has been a significant error of law or other abuse

of discretion,' although we 'regard ourselves in as good a position as the motion judge to assess the trial record'" (citation omitted). Commonwealth v. Jackson, 468 Mass. 1009, 1010 (2014). We note at the outset that many of the defendant's arguments pertain to alleged trial errors as to which there was no objection, or which were not raised in the defendant's prior postconviction proceedings. For these matters, "we review to determine whether there was error and, if so, whether the error created a substantial risk of a miscarriage of justice." Commonwealth v. Ahern, 96 Mass. App. Ct. 197, 202 (2019). See Commonwealth v. Randolph, 438 Mass. 290, 294-295 (2002).

1. Newly discovered evidence. The defendant first contends that a new trial is warranted because Hernandez, who did not testify at trial, is "newly discovered," and that the information that Hernandez provided posttrial likely would have influenced the jury. To prevail on this theory, the defendant must show "that the evidence was [previously] unknown to [him] or [his] counsel." See, e.g., Commonwealth v. Pike, 431 Mass. 212, 218 (2000). Here, the motion judge concluded that Hernandez was known to defense counsel prior to trial, such that he was not "newly discovered." We agree. In an affidavit accompanying the defendant's first new trial motion, defense counsel averred that he "met with Sergio Hernandez" "[p]rior to

5

trial."[1]  Hernandez's affidavit, signed in September 2021 and submitted in connection with the second motion for a new trial, confirms that this meeting took place, and that during that meeting Hernandez "told [defense counsel] what [was] included in [Hernandez's 2021] affidavit."

The defendant next highlights Hernandez's averment that, prior to the defendant's trial, he told a Commonwealth prosecutor that he had lived at 2 McIntyre Court up until "three to four weeks" before the defendant's arrest and "never saw any evidence of drug dealing."  The defendant argues that the Commonwealth's failure to disclose this information violated both Mass. R. Crim. P. 14 (a), as amended, 444 Mass. 1501 (2012), as well as the constitutional obligation to disclose known exculpatory information.  See Commonwealth v. Sullivan, 478 Mass. 369, 380 (2017), citing Brady v. Maryland, 373 U.S. 83, 87 (1963).

---

[1] Defense counsel did not submit an affidavit in connection with the defendant's second new trial motion.  Rather, current appellate counsel submitted an affidavit which stated that, in August 2021, defense counsel told her that "as far as [he] could tell [Hernandez] was unable to be located at the time of trial." The statement is not necessarily inconsistent with defense counsel's prior affidavit, which was made closer in time to the events at issue.  Particularly where Hernandez's affidavit confirmed that Hernandez met with defense counsel prior to trial, the motion judge did not err in crediting defense counsel's prior affidavit without holding an evidentiary hearing.  See Commonwealth v. Torres, 469 Mass. 398, 403 (2014).

6

The defendant's argument under rule 14 (a) fails, because there is no indication the Commonwealth had in its possession a written statement to which rule 14 (a) applies.  See Commonwealth v. Bing Sial Liang, 434 Mass. 131, 137 (2001).  There is no evidence that, for example, the interviewer prepared an interview memorandum.  Hernandez does not claim to have given a written statement, and the Commonwealth represented in a verified discovery response that it did not locate a writing.

Turning to the constitutional argument, even assuming that Hernandez made the subject statements to the prosecution,[2] the defendant has not made the required showing that he was prejudiced by the purported nondisclosure.  See Sullivan, 478 Mass. at 380.  Hernandez states in his affidavit that prior to trial he spoke not only with a Commonwealth interviewer, but also with defense counsel, and that he told each of them the same information (included in his affidavit).  "The defendant was in no way prejudiced by the failure of the Commonwealth to tell him or his counsel what his counsel already knew." Commonwealth v. Rooney, 365 Mass. 484, 491 (1974).  This is especially so where defense counsel previously averred (in connection with the first new trial motion) that he met with

_____

[2] We express no opinion on this factual issue.  The Commonwealth of course has a duty to disclose known exculpatory information in its possession.  See Commonwealth v. Rodriguez-Nieves, 487 Mass. 171, 176-177 (2021).

Hernandez, but that he nonetheless made the strategic decision to pursue a defense under Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980), in which he "focus[ed] on the fact that the police never looked for [Hernandez]." Cf. Commonwealth v. Diaz, 100 Mass. App. Ct. 588, 589 (2022) (no prejudice "where defense counsel was already aware of the [nondisclosed evidence] and had decided not to use it for strategic reasons").

2. False testimony. The defendant next argues that the Commonwealth knowingly elicited false testimony from a trial witness, special agent Coletti, who answered "Yes" when asked by the Commonwealth: "You did see Navarro go in and out of th[e] front door [of 2 McIntyre Court] every single drug deal that happened?" The defendant did not object to the question, and he did not raise this issue in his prior postconviction proceedings. We therefore review for a substantial risk of a miscarriage of justice. See Randolph, 438 Mass. at 294; Commonwealth v. Deeran, 397 Mass. 136, 139 (1986).

The Commonwealth does not contest that Coletti's testimony was incorrect, as it appears that Coletti himself was never assigned to surveil the front door of the apartment. The Commonwealth argues instead that Coletti made an unintentional misstatement that does not give rise to a substantial risk of miscarriage of justice. We agree. Notably, there was another agent who was tasked with surveilling the front door, and that

8

agent testified that he saw an individual matching Navarro's description enter and exit the apartment close in time to the relevant drug sales.  The evidence accordingly was properly before the jury.  See Commonwealth v. Resende, 476 Mass. 141, 152 (2017).  The misstatement itself was brief and isolated.  Cf. Commonwealth v. McGann, 484 Mass. 312, 324 (2020).  Nothing in the record indicates that Coletti's testimony was intentionally false and elicited as such by the Commonwealth.  And finally, as this court noted in deciding the defendant's prior appeal, the Commonwealth presented a strong case.  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).  Given these considerations, we are convinced that the error did not result in a substantial risk of a miscarriage of justice.

3.  Ineffective assistance of counsel.  The defendant also argues that he is entitled to a new trial because his trial and prior appellate counsel rendered ineffective assistance.  Notably, the defendant raised ineffective assistance of defense counsel in his first new trial motion, and those arguments were rejected by the motion judge, whose decision was affirmed on appeal.  Many of the defendant's current arguments were not asserted in that first new trial motion, even though they were "reasonably available" to him.  See Deeran, 397 Mass. at 139.  We nevertheless review for a substantial risk of a miscarriage

9

of justice.  Commonwealth v. LeFave, 430 Mass. 169, 173-174 (1999).

"Where a motion for a new trial is based on ineffective assistance of counsel, the defendant must show that (1) the 'behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer' and (2) such failing 'likely deprived the defendant of an otherwise available, substantial ground of defence'" (citation omitted). Commonwealth v. Tavares, 491 Mass. 362, 365 (2023).

a.  Hernandez.  The defendant argues that if Hernandez is not "newly discovered" then defense counsel was ineffective by not calling him as a witness.  The decision whether to call a witness is strategic, Commonwealth v. Jacobs, 488 Mass. 597, 602 (2021), and "amounts to ineffective assistance 'only if it was manifestly unreasonable when made'" (citation omitted). Commonwealth v. Morales, 453 Mass. 40, 44 (2009).  Here, defense counsel averred in connection with the defendant's first new trial motion that he "deci[ded] that [he] did not need to call [Hernandez] as a witness and instead" to raise a Bowden defense. The focus of that Bowden defense was "on the fact that the police never looked for [Hernandez]," suggesting that Hernandez was behind the drug operation.  Given that strategic decision, defense counsel reasonably could have concluded that he did not want Hernandez to testify, as defense counsel could have

10

determined that Hernandez would have "harm[ed] the defendant's case more than . . . helped it." Jacobs, supra at 603. We are not convinced that trial counsel's decision was manifestly unreasonable, let alone that a substantial risk of a miscarriage of justice resulted. See Randolph, 438 Mass. at 293-295.

b. Motion to suppress. The defendant also claims that trial counsel provided ineffective assistance by not challenging, at the motion to suppress stage, the Commonwealth's reliance on the "collective knowledge doctrine" to support the warrantless searches of the defendant, the Mitsubishi, and the apartments at 2 McIntyre Court. Specifically, he argues that the State trooper who testified at the suppression hearing lacked "direct knowledge" of some of the circumstances that led to those searches. Where, as here, a defendant premises "a claim of ineffective assistance . . . on grounds not raised in a motion to suppress, the defendant must show that the motion" likely would have succeeded. See Commonwealth v. Banville, 457 Mass. 530, 534 (2010). See also Commonwealth v. Villalobos, 89 Mass. App. Ct. 432, 442-443 (2016), S.C., 478 Mass. 1007 (2017).[3]

_____

[3] The defendant's primary suppression argument on this appeal is not based upon ineffective assistance of counsel; rather, he argues directly that his motion to suppress should have been granted due to the Commonwealth's purportedly improper reliance on the collective knowledge doctrine. But the defendant did not raise the trooper's lack of "direct knowledge" during the litigation of the motion to suppress or on direct appeal. "Because the defendant did not properly alert the judge to

11

Here, the trooper testified about his direct involvement in the investigation, relaying that he saw the defendant inside the Macy's and effected the defendant's arrest; that he was part of the surveillance team that observed the defendant and the Mitsubishi on the day of that arrest (and that had seen the car used in prior drug sales); and that he was present at 2 McIntyre Court when officers entered the apartment. Additional members of the surveillance team contemporaneously relayed information to the trooper (and the rest of the team) via radio, including that the defendant and Navarro walked into the Macy's together, that Navarro was carrying a bag, and that Navarro was arrested after it was discovered that the bag appeared to contain heroin. Under the circumstances, there was no "collective knowledge" issue, because the arresting and searching officers had received all the information necessary to establish probable cause before their respective actions.[4] See Commonwealth v. Privette, 491 Mass. 501, 503 (2023) (aggregation of officers' knowledge permissible where they are "involved in a joint investigation,

_____

[this] argument, the waiver doctrine precludes him from doing so on appeal." See Commonwealth v. Silva, 440 Mass. 772, 783 (2004). In any event, for the reasons explained infra, we discern no substantial risk of a miscarriage of justice in the denial of the defendant's motion to suppress. See Commonwealth v. Dew, 478 Mass. 304, 309-310 (2017).

[4] Nor was the defendant's prior appellate counsel ineffective by not raising this argument previously. See Commonwealth v. Richard, 398 Mass. 392, 394, cert. denied 479 U.S. 1010 (1986).

12

pursuing a mutual purpose and objective, and . . . in close and continuous communication with each other about that shared objective").  Nor was there error in the trooper testifying to what he heard from others, as "hearsay is admissible in a motion hearing relating to suppression."  See Commonwealth v. Fletcher, 52 Mass. App. Ct. 166, 168 n.2 (2001).  Defense counsel therefore did not render ineffective assistance by not moving to suppress on those bases.  In any event, we are not persuaded that suppression was likely, as this court has already held that the searches at issues, on these facts, were supported by probable cause.

c.  Hearsay statements.  Next, the defendant faults trial counsel for not objecting to testimony from police officers that repeated hearsay statements attributed to Navarro, to another co-defendant, Junior Carmona, and to the CI.  In particular, officers testified about (1) what they heard Navarro and Carmona say concerning "the times and locations of" previous controlled purchases that did not involve the defendant, including "the quantities of drugs and prices that were negotiated," and (2) what the CI told officers that Navarro had said leading up to the October 16 sale about the "price, timing, . . . and exchange of samples."  However, counsel's failure to object did not prejudice the defendant, primarily because the statements did not involve or reference the defendant in the prior controlled

13

purchases.  Moreover, many of the details about the controlled purchases were "cumulative of other, properly admitted evidence" -- that is, testimony from officers who observed the transactions, provided the CI with funds for the purchases, and then collected the drugs that were sold to the CI.  See Resende, 476 Mass. at 152.  Accordingly, and considering this court's previous determination that the Commonwealth presented a strong case, "we are not left with 'a serious doubt whether the result of the trial might have been different'" (citation omitted). Commonwealth v. Leary, 92 Mass. App. Ct. 332, 346-347 (2017).

d.  Prior appellate counsel.  Turning to his appellate counsel, the defendant claims that counsel was deficient by not raising the Federal constitutional implications of certain of the defendant's prior appellate arguments.  The motion judge rejected this argument "for the reasons stated in the Commonwealth's [o]pposition to the [d]efendant's [s]econd [m]otion for a [n]ew [t]rial," and we agree.  The thrust of the defendant's argument is that prior appellate counsel would have obtained a better result had he raised the Federal constitutional implications of (1) a law enforcement agent's allegedly false testimony to the grand jury; (2) the admission of allegedly improper expert opinion testimony; and (3) the Commonwealth's closing argument.  However, this court previously held that those prior arguments were without merit and

14

"unavailing," or otherwise did not evidence a "substantial risk of a miscarriage of justice."  "Because a better result would not have been obtained had the claims been made under the United States Constitution, we reject the defendant's argument[s]."  See Commonwealth v. Hardy, 464 Mass. 660, 669 (2013).[5]

4.  Postconviction discovery.  Finally, the defendant separately argues that the motion judge abused his discretion in denying the defendant's motion for postconviction discovery regarding Hernandez, other "potentially exculpatory evidence," and "[a]ny and all notes . . . that contain any statements from any witness."  Under Mass. R. Crim. P. 30 (c) (4), as appearing in 435 Mass. 1501 (2001), a judge "may authorize [postconviction] discovery" where "affidavits filed by the moving party under [Mass. R. Crim. P. 30] (c) (3) establish a prima facie case for relief."  The motion judge did not abuse the "broad discretion" he has to decide whether the "defendant . . . established a prima facie case for relief."  Commonwealth v. Ware, 471 Mass. 85, 94 (2015).  First, the Commonwealth satisfied the defendant's requests concerning Hernandez, stating

---

[5] Given our conclusions above, we find no merit in the defendant's argument that the cumulative effect of the claimed errors warrants a new trial.  See Commonwealth v. Hobbs, 482 Mass. 538, 560 (2019).  We also conclude that the motion judge did not abuse his discretion in declining to hold an evidentiary hearing.  See Commonwealth v. Figueroa, 422 Mass. 72, 77 (1996); Commonwealth v. Stewart, 383 Mass. 253, 259 (1981).

15

in a verified discovery response that "there are no [responsive] materials in the Commonwealth's file." Nor has the defendant offered any reason to think that the Commonwealth withheld other "potentially exculpatory" evidence or witness statements. Accordingly, he has not made a prima facie showing "that it is reasonably likely that such discovery will lead to evidence possibly warranting a new trial." See Commonwealth v. Camacho, 472 Mass. 587, 598 (2015).[6]

> Orders denying motion for a new trial and for postconviction discovery affirmed.
>
> By the Court (Meade, Englander & Grant, JJ.[7]),
>
> *Joseph F. Stanton*
>
> Clerk

Entered: April 21, 2023.

---

[6] We have considered each of the defendant's arguments on appeal. To the extent any of those arguments are not specifically addressed herein, we have not overlooked them, but have determined that they lack merit. See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[7] The panelists are listed in order of seniority.